[Crim. No. 3459.    Third Dist.    April 3, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH KING HENDERSON, Defendant and Appellant.

A. M. Mull, Jr., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant was charged with violation of Health and Safety Code sections 11531 (sale of marijuana) and 11530 (possession of marijuana). At first he entered a plea of not guilty to both charges. Later he withdrew this plea and entered a plea of guilty to the possession charge. Upon motion of the district attorney the sale charge was dismissed. After interim proceedings the court entered a judg-

ment sentencing defendant to the state prison. Defendant appeals.

On appeal defendant contends that the court abused its discretion and acted arbitrarily when it (1) denied defendant's application for probation, (2) rejected recommendations of the Department of Corrections made pursuant to Penal Code section 1203.03, and (3) when it refused to request a second probation report after receiving the report and recommendation of the Department of Corrections.

After entering his plea of guilty, defendant applied for probation. The court ordered a probation report. The report, dated December 3, 1962, included the following information: that defendant had been in trouble on various occasions since the age of 15 (defendant was born in 1941); although many of the charges were for Vehicle Code violations, one charge was for stealing a motorcycle; that as a juvenile, he had been "picked up" for loitering, burglary, and assault with a deadly weapon; that defendant admitted using marijuana for more than a year; that he had had only two jobs, both of short duration; that he was living with his parents, both of whom were unemployed at the time of the report; that he had behavioral problems at school and the school authorities regarded him as a disturbed individual who needed psychiatric attention; that he had been arrested after selling marijuana to an undercover agent for $20; that he had 16 marijuana cigarettes in his possession when arrested. The report further stated that at one time defendant had been a voluntary patient in Napa State Hospital after suffering a nervous breakdown; that he had had four visits to the Sacramento clinic of the Department of Mental Hygiene but stopped because he felt that he no longer needed treatment; that he was currently suffering from a personality disturbance. The probation officer recommended that probation be denied in view of defendant's past history and his poor response to past probationary services.

Defendant was before the court with counsel on December 6, 1962. Although defendant had consulted a private psychiatrist who had submitted a report indicating that he would respond to outpatient psychiatric care, the court expressed the view that probation was not merited. At the request of defense counsel, the court then ordered that defendant be sent to a diagnostic facility of the Department of Corrections for diagnosis and recommendation pursuant to Penal Code section 1203.03.

Defendant spent the diagnostic period at the California Medical Facility of the Department of Corrections at Vacaville. On March 13, 1963, he was again before the court with counsel. The report and recommendations of the Department of Corrections had been received and considered by the court. In summary, this report stated that defendant's relationship with his parents had been poor; that his mother had been hospitalized on several occasions for alcoholism and mental illness and that his father had an alcoholic problem and numerous conflicts with the law; that defendant had recently married but his wife was seeking an annulment or divorce. The report further stated that while defendant had been diagnosed as a schizophrenic, the absence of current overt symptoms of psychosis would probably prevent his commitment to the Department of Mental Hygiene. The report noted that following his arrest defendant had been twice interviewed by a private psychiatrist who had expressed the belief that defendant could profit from outpatient treatment and had indicated that he would treat defendant at a reduced fee. The report recommended that defendant be placed on local probation with an express provision that he obtain and continue in outpatient psychiatric treatment. The recommendation, however, was qualified in that "if probationary supervision and out-patient treatment do not appear to be practicable his own welfare and the welfare of society would necessitate a commitment to the Department of Mental Hygiene. In the event this is not possible it is suggested that as an alternative he be committed to the California Youth Authority for institutional care, supervision and treatment, preferably through placement at the California Medical Facility."

Having examined this report, the court stated: "I am not satisfied that this young man ought to be placed on probation at this time, although certainly it is the disposition of the court to follow that process as far as possible. It appears obvious from everything before the court that he is [in] need of help. I think, perhaps, the alternative suggested by the Department of Corrections might be a solution to this or at least a partial solution, and that is the reference to the Youth Authority." Defendant's counsel then informed the court that defendant's father was willing to finance outpatient psychiatric care and that a private psychiatrist was available. The court then referred defendant to the Youth Authority with a request from the court that he be admitted. A few days later the Director of the Youth Authority sent a letter to the court stating that the Youth Authority Board, after

consultation with its chief psychiatrist, had decided to reject the case. The letter expressed the opinion that defendant could be better served by the Department of Mental Hygiene rather than the Youth Authority; that defendant was 21 years of age and "our program does not guarantee psychiatric treatment."

Further hearing was held on March 22, 1963. At that time the court stated: "I am satisfied, also, that it would be entirely impractical and contrary to the interests of society and this young man to put him on probation at this time. Daily and constant supervision is indicated by the entire background that he cannot respond to probation treatment. It has been repeatedly tried. So that leaves one disposition, and I necessarily, then, deny the application for probation." After hearing argument of defense counsel, the court stated: "It is my feeling that what we should do with this young man at this time is to commit him to the institution for the offense with which he is convicted, with the recommendation they retain him at the California Medical Facility and there treat him, give him close supervision and careful treatment. . . . Now, that is the disposition which I think impresses me as being one which would most surely protect this young man, the people, and society." Rejecting counsel's request that defendant should be granted probation on condition that he receive private psychiatric treatment, the court stated: "I think it would be most unwise to put him out under probation and supervision with [the] tenuous hope that he might go to Dr. Toller a couple times a month under circumstances which these people cannot afford. He hasn't shown any disposition in the past to get psychiatric help or get help or receive help."

The court then arraigned defendant for judgment and imposed judgment of imprisonment. The court sent a communication to the Department of Corrections recommending that defendant be retained at the Vacaville institution for treatment.

█ Probation is an act of clemency which rests within the discretion of the trial court, whose order granting or denying probation will not be disturbed on appeal unless there has been an abuse of discretion. (*People* v. *Mancha*, 213 Cal.App.2d 590, 592 [29 Cal.Rptr. 72].) Discretion imports an individual judgment, and an appellate court will not substitute its opinion for that of the trial court. (*People* v. *Miller*, 186 Cal.App.2d 34, 36-37 [8 Cal.Rptr. 578].) Even if

this court disagreed with the determination of the trial judge, we would not disturb that determination unless it manifested an abuse of discretion. Discretion implies absence of arbitrary determination, the exercise of discriminating judgment within the bounds of reason. (*People* v. *Surplice*, 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826].)

In this case the trial judge read and considered the probation report. He did not adopt the probation officer's negative recommendation as a matter of routine, but exercised an independent evaluation. In his opinion, the defendant's history (including numerous examples of antisocial conduct) and personal characteristics (including borderline schizophrenia) made him a poor probation risk. On appeal defendant points to certain occurrences which might indicate some degree of responsibility and responsiveness. Such an argument demonstrates only that disagreement is possible, not that the court's view was arbitrary or unreasonable. Having in mind not only the welfare of the defendant but the interests of society, the court decided that the situation demanded a custodial program and did not permit probation and outpatient psychiatric treatment. There was no abuse of discretion in such a determination.

The recommendation of the Department of Corrections made under Penal Code section 1203.03 contained a curious inconsistency which was noted by the trial court. The report stated that current absence of overt psychotic symptoms made defendant's acceptance by the Department of Mental Hygiene improbable. (The private psychiatrist who saw defendant also noted absence of overt psychosis.) After recommending local probation and outpatient psychiatric treatment, the report then suggested two secondary alternatives, one being commitment to the California Youth Authority (preferably through placement at the California Medical Facility), the other being commitment to the Department of Mental Hygiene. The last alternative was the very one which the report had negatived as an improbability.

Thus the recommendation of the Department of Corrections was a highly qualified one. The court did not ignore it. The court had determined, with ample support in the facts, that custody plus psychiatric care was the preferable program; that release on condition of psychiatric treatment was inadequate and involved too many risks. Thus the primary recommendation of the Department of Corrections was unacceptable. Of the two alternatives the department itself had indicated that reference to the Department of Mental Hy-

giene would be fruitless. Thus the court accepted the third alternative recommended to it—reference to the California Youth Authority.

Had the latter agency chosen to accept defendant, it could have placed him at the Vacaville facility for treatment. (Welf. & Inst. Code, § 1755.5.) Such a program was one of the expressed recommendations of the Department of Corrections and apparently the hope of the trial judge. The Youth Authority, for its own reasons, rejected the possibility (see Welf. & Inst. Code, § 1756.5). Thus, before rejecting the primary recommendation of the Department of Corrections, the court attempted to pursue the only practicable alternative offered by the department's report, only to have that attempt frustrated.

The court's refusal to order a second probation report was far from an abuse of discretion. There was little or no occasion for additional social history, since defendant had been in continual custody since a date preceding the original report. All the diagnoses and recommendations were before the court. To be sure, a new reference to the probation officer might have resulted in a different recommendation for whatever it was worth. Whether, in view of the intervening reports and diagnoses, the probation officer would have made a new or the same recommendation was inconsequential, since the court had power to reject that recommendation in any event. Thus for all practical purposes, the original probation report was "current" and there was no necessity, either in law or logic, for a new one. (Cf. *People* v. *Rojas*, 57 Cal.2d 676, 682 [21 Cal.Rptr. 564, 371 P.2d 300].)

Defendant is an example of the offender who is simultaneously a correctional and a medical-psychiatric problem, yet not altogether one or the other. The trial court, with ample justification, determined that psychiatric treatment in custody represented the most suitable program. Since the defendant had passed the talismanic eighteenth birthday, such a program was not available in the county of commitment; nor, according to information provided to the court, was it available at the hands of the Department of Mental Hygiene or the Youth Authority. The court was able to discover only one institution, the California Medical Facility, at which the desired program was available, and it took the only available procedural method of securing that objective. The action was far from arbitrary, far from unreasonable and certainly not an abuse of discretion. Defendant's argument on appeal is

premised on the rather ironic circumstance that he might have been placed at Vacaville as a Youth Authority ward rather than as a convicted felon. That circumstance results from the decision of the correctional authorities no less than that of the court. We note that a 1963 amendment to Penal Code section 1168 permits the correctional authorities to return such medical-correctional cases to the jurisdiction of the court under appropriate circumstances. We mention the amendment without passing on its application here.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.