[Crim. No. 9962. First Dist., Div. Two. Sept. 22, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE OZENE, Defendant and Appellant.

## COUNSEL

Larry Hultquist, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Joyce F. Nedde and Michael Buzzell, Deputy Attorneys General.

## OPINION

KANE, J.—Defendant George Ozene appeals from the trial court's judgment entered on a jury verdict finding him guilty of violation of Penal Code section 261, subdivision 3 (rape by force and violence).

### The Prosecution's Case

On June 2, 1970 at approximately 3 p.m. the prosecutrix ("Sheila") left her apartment located on Hayes Street in San Francisco in an attempt to find her boyfriend at an address on Franklin Street. She had been having problems with the boyfriend and was crying as she reached the street in front of her apartment house. At that point she was approached by appellant who asked her what was wrong. When Sheila asked appellant for directions to Franklin Street, appellant offered to show her the way, suggesting, however, that she should first wash her face; whereupon they went to Sheila's apartment where appellant told her to calm down.

After a while Sheila stood up stating that she had to leave to find her boyfriend. At this point she was hit on the head with a skillet wielded by appellant. Although the force of the blow was sufficient to shatter the skillet, it did not knock her out. Appellant than grabbed her and threw her down to the floor and said, "If you scream, I am going to kill you." Sheila screamed and appellant started strangling her. After Sheila had become weak, appellant forced her to her knees and placed his penis in her mouth. Sheila fell to the floor again and once more appellant started strangling her. She told appellant that she had a disease. Nevertheless appellant turned her over on her stomach and inserted his penis in her rectum. He then turned her over on her back and placed his penis in her vagina. After appellant had an orgasm, he ran from the apartment. During the fight which lasted about 15 minutes Sheila scratched her assailant, leaving a blood streak on his face.

She then ran naked into a florist shop next door where someone gave her a dress and where aid was summoned. Shortly thereafter, Sheila went to Central Emergency Hospital where she was interviewed by the authorities. She later went to the University of California Medical Center where X-rays of her skull and neck were taken.

On the day of the incident Sheila was shown photographs by police officers. The group of photographs were all pictures of black men of approximately the same age. She identified appellant as being the man who attacked her.

Officer Barry Johnson testified that on June 2, 1970, at about 3 p.m., he was in the area of the 500 block of Hayes Street, at which time he saw a person, subsequently identified as appellant, running north on Laguna toward Grove while continually looking back. Appellant had a rip in his pants. About mid-block appellant slowed down, took his jacket off, and placed it around his pants covering the rip. Officer Johnson stopped appellant and asked him several questions. Appellant, who had a blood smear on his cheek, appeared nervous and gave evasive answers. At first he stated that his name was Silver and that he had no identification, but later produced a driver's license which showed his real name. When Officer Johnson learned that no incident was reported in the area he released appellant from the temporary detention.

### The Defense

In rebuttal, appellant took the stand in his own behalf and gave alibi testimony. He stated that early on the morning of June 2, 1970, he left San Francisco by bus and arrived in Marin City at 9:30 a.m. where he stayed until June 6, 1970. His alibi was verified by a girlfriend, a friend of the girlfriend and by appellant's sister who all testified that between 2:30 and 3 p.m. on June 2, 1970, they saw appellant in Marin City, and, furthermore, that on June 2, 1970, appellant's car was inoperable.

Appellant argues that the judgment below is erroneous because (I) there is insufficient evidence to sustain the conviction of forcible rape; (II) the instruction taken from *Allen* v. *United States* (1896) 164 U.S. 492 [41 L.Ed. 528, 17 S.Ct. 154] (*"Allen* instruction") was coercive and thereby deprived him of his right to trial by an impartial jury; and (III) the diagnostic report prepared pursuant to Penal Code section 1203.03 deprived him of due process of law.

### I. *Sufficiency of evidence*

Appellant's first contention, in essence, is that the judgment of

conviction is not supported by sufficient evidence because, he argues, it was based solely on Sheila's uncorroborated testimony which, in turn, is contradicted by a host of other evidence. This argument is patently without merit.

■ It is blackletter law that any conflict or contradiction in the evidence, or any inconsistency in the testimony of witnesses must be resolved by the trier of fact who is the sole judge of the credibility of the witnesses. It is well settled in California that one witness, if believed by the jury, is sufficient to sustain a verdict. ■ To warrant the rejection by a reviewing court of statements given by a witness who has been believed by the trial court or the jury, there must exist either a physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbablility must plainly appear (*People* v. *Jones* (1970) 10 Cal.App.3d 237, 247 [88 Cal.Rptr. 871]; *People* v. *Perrin* (1967) 247 Cal.App.2d 838, 844 [55 Cal.Rptr. 847]; *People* v. *Seals* (1961) 191 Cal.App.2d 734, 738 [13 Cal.Rptr. 7]).

■ Viewing the evidence in light of these principles it simply cannot be said that the statements of Sheila are inherently improbable or physically impossible or of such a nature as to shock the moral sense of this court. Consequently, after having been believed by the jury, they are not subject to review on appeal.

Moreover, appellant's contention notwithstanding, the testimony of Sheila is not uncorroborated. On the contrary, the credibility of her statements was greatly enhanced by the testimony of Officer Johnson and by the additional evidence that appellant gave a false name when he was briefly detained by the police near the scene of the crime.

II. *The Allen instruction*

The facts giving rise to appellant's complaint relative to the *Allen* instruction may be summarized as follows:

The jury began its deliberations on November 17, 1970 at 11:32 a.m. At 6:03 p.m. on the same day the court was informed that the jury was hung. The next day the jury continued its deliberation at 9:35 a.m. At 4:05 p.m. the jury returned to the courtroom and the foreman advised the court that the jury was still hung with a numerical division of 11 to 1. The court, however, was not notified whether the division was for acquittal or conviction. Thereupon, the court read the jury the *Allen* instruction taken from *People* v. *Ortega* (1969) 2 Cal.App.3d 884, 896 [83

Cal.Rptr. 260]: "Ladies and gentlemen of the jury, in a large proportion of cases and perhaps strictly speaking, in all cases, absolute certainty cannot be attained or expected. *Although the verdict to which a juror agrees must,* of course, *be his own verdict, the result of his own convictions and not a mere acquiescence in the conclusion of his* or her *fellows, yet* in order to bring twelve minds to a unanimous result, *you must examine the questions* submitted to you with candor and *with a proper regard and deference to the opinions of each other.* You should consider that the case must at some time be decided that you are selected in the same manner and from the same source from which any future jury must be selected, and there is no reason to suppose the case will ever be submitted to twelve men or women more intelligent, more impartial or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, *it is your duty to decide the case, if you can conscientiously do so.*

"In order to make a decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is on the People of the State of California to establish every part of it beyond a reasonable doubt. And if in any part of it you are left in doubt, the defendant is entitled to the benefit of the doubt and must be acquitted. But in conferring together, you ought to pay proper respect to each other's opinions and listen with a disposition to be convinced to each other's arguments.

"And on the other hand, if much the larger of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one, which makes no impression upon the minds of so many men or women equally honest, equally intelligent with himself or herself, and to have heard the same evidence with the same attention and with an equal desire to arrive at the truth and under the sanction of the same oath.

"And on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment, which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows.

"*That is given to you as a suggestion of* the theory and rationale behind jurors coming to a decision one way or the other.

"So the Court is going to ask you to retire and continue in your deliberations." (Italics added.)

At 4:09 p.m. the jury retired and returned again at 6:22 p.m. notifying the court that they were yet unable to reach a decision. The court reread the above cited instruction. At 7:12 p.m. the jury returned a verdict of conviction on the rape charge and verdicts of acquittal on the two other charges.[1]

In support of his motion for new trial, appellant filed the declaration of juror Ava Louise Lockhart who stated that she did not believe that Sheila was raped, but changed her vote for conviction only upon the urging of the majority which, she contended, relied on the *Allen* instruction.

■ Appellant contends that (a) the *Allen* instruction is coercive as a matter of law because it urges the jury to reach a verdict and cautions only the minority to consider the opinion of the majority. The inevitable effect of this, according to appellant, is a suggestion to the minority to surrender their own convictions and follow the majority, which ultimately amounts to a violation of defendant's constitutional right to trial by an impartial jury; (b) the *Allen* instruction was coercive under the facts presented by the case at bench.

(a) Appellant's constitutional argument is clearly mistaken. First, the *Allen* instruction on its face lacks any kind of coercion. As Judge Burger (now Chief Justice Burger) put it in *Fulwood* v. *United States* (1966) 369 F.2d 960, 962 [125 App.D.C. 183], "the *Allen* charge is a carefully balanced method of reminding jurors of their elementary obligations, which they can lose sight of during protracted deliberations. It is perfectly valid to remind them that they should give some thought to the views of others and should reconsider their position in light of those views. The charge as given here did not *require* the jury to reach a verdict but only reminded them of their duty to attempt an accommodation. While it suggests to the minority that they reconsider their position in light of a majority having a different view, it reminds them that they should not acquiesce in a verdict which does not represent their own convictions." All that was said by the Chief Justice is equally applicable to the instruction given in this case.

Second, appellant himself admits, as he must, that no decisions in California or elsewhere have ever held or reached the conclusion that the *Allen* instruction is unconstitutional. Even those outside cases which have disapproved it, have emphasized that the *Allen* instruction is not per se coercive. Rather, the very basis of the holding of these latter cases is that the instruction in each particular case was coercive either because the judge forced the jury to reach a verdict (*United States* v. *Thomas* (1971)

---

[1] Penal Code sections 286 (sodomy) and 288a (oral copulation).

449 F.2d 1177, 1182 [146 App.D.C. 101]; *Jenkins* v. *United States* (1965) 380 U.S. 445 [13 L.Ed.2d 957, 85 S.Ct. 1059]; *Fields* v. *State* (Alaska 1971) 487 P.2d 831) or deviated from the language of the *Allen* instruction proper (*Green* v. *United States* (5th Cir. 1962) 309 F.2d 852). In rejecting appellant's contention that a recent trend of cases is to disapprove the *Allen* instruction, we simply point out that the United States Supreme Court has, as recently as May 1972, inferentially expressed its adherence to it (see *Johnson* v. *Louisiana* (1972) 406 U.S. 356, 361-362 [32 L.Ed.2d 152, 159, 92 S.Ct. 1620]).

■ (b) Adverting to appellant's second contention, it ought to be emphasized that the instruction given in the case at bench has been consistently approved in California if the surrounding circumstances have not made it coercive (*People* v. *Ortega, supra; People* v. *Barnes* (1962) 210 Cal.App.2d 740, 748 [26 Cal.Rptr. 793]; *People* v. *Baumgartner* (1958) 166 Cal.App.2d 103, 106-108 [332 P.2d 366]). The basic test of coerciveness has been stated to be whether the instruction and the remarks of the court, viewed in the totality of the circumstances, operated to displace the independent judgment of the jury in favor of compromise and expediency (*People* v. *Carter* (1968) 68 Cal.2d 810, 817 [69 Cal.Rptr. 297, 442 P.2d 353]). Thus, the instruction was held coercive when the judge emphasized that a verdict must be reached because of the simplicity of the evidence or for any other reason (*People* v. *Crossland* (1960) 182 Cal. App.2d 117 [5 Cal.Rptr. 781]); and/or when the judge threatened to lock up the jury until the verdict was agreed upon (*People* v. *Carter, supra,* 68 Cal.2d 810; *People* v. *Crowley* (1950) 101 Cal.App.2d 71 [224 P.2d 748]); or where the judge knew not only the numerical division of the jury but also how the jurors were divided upon the question of guilt (*People* v. *Baumgartner, supra*).

Turning to the case at bench with the foregoing views in mind, it becomes clear that none of the coercive elements are present. Thus, there is no indication that the judge made any remark that a verdict must be reached because of the simplicity of evidence or any other reason; or that he threatened to lock up the jury until a verdict was reached. Significantly enough, while the judge knew that the jury stood eleven to one, he was unaware whether the division of the jury was for conviction or acquittal. Consequently, there is simply no basis to support appellant's argument that the instruction was coercive.

Appellant places undue weight on the rereading of the instruction by the

judge and on the fact that less than one hour elapsed between the rereading of the instruction and the rendering of the verdict. However, neither of these contentions is sufficient to show coerciveness. The rereading of the instruction does not supply more coerciveness than did the first reading. As far as the time factor is concerned, it bears emphasis that it alone does not establish a coercive effect because the time factor is at best merely one of the elements to be considered in deciding whether the instruction, in light of the totality of the circumstances, was coercive.

Appellant attempted to show actual coercion by filing with the trial court the sworn declaration of the hold-out juror, Ava Louise Lockhart, who recounted the reasons why she changed her vote concerning the rape charge. It is beyond dispute, however, that evidence of the mental processes of the respective jurors or the considerations influencing their verdict is inadmissible (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349 [78 Cal. Rptr. 196, 455 P.2d 132]; *People* v. *Stevenson* (1970) 4 Cal.App.3d 443, 445 [84 Cal.Rptr. 349]; Evid. Code, § 1150, subd. (a)).[2]

III. *Diagnostic report*

▆▆▆ Appellant's final contention that the trial court's use of an allegedly biased diagnostic report prepared pursuant to Penal Code section 1203.03[3] deprived him of due process of law teeters on the precipitous edge of frivolity.

---

[2]Evidence Code section 1150, subdivision (a), provides that "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. *No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.*" (Italics added.)

[3]Penal Code section 1203.03 provides in pertinent part that "(a) In any case in which a defendant is convicted of an offense punishable by imprisonment in the state prison, the court, if it concludes that a just disposition of the case requires such diagnosis and treatment services as can be provided at a diagnostic facility of the Department of Corrections, may order that defendant be placed temporarily in such facility for a period not to exceed 90 days, with the further provision in such order that the Director of the Department of Corrections report to the court his diagnosis and recommendations concerning the defendant within the 90-day period.

"(b) The Director of the Department of Corrections shall, within the 90 days, cause defendant to be observed and examined and shall forward to the court his diagnosis and recommendation concerning the disposition of defendant's case. Such diagnosis and recommendation shall be embodied in a written report and copies of the report shall be served only upon the defendant or his counsel, the probation officer, and the prosecuting attorney by the court receiving such report."

The very purpose of the diagnostic study under Penal Code section 1203.03, is to provide the sentencing court with the opinions, observations and expertise of the Department of Corrections personnel who are charged with the duty of carrying out the diagnostic evaluation. The report of which appellant now complains is mandatorily required by the statute (see subd. (b), fn. 3, *ante*).

It should be noted that utilization of the 1203.03 procedure is entirely within the discretion of the court. In short, since appellant could have been sentenced directly to state prison without being sent for the diagnostic study, he should not now be heard to complain that the same result has obtained after such evaluation.

■ Furthermore, it is well settled that probation is not a right but an act of clemency which rests within the discretion of the trial court whose order granting or denying probation will not be disturbed on appeal unless there has been an abuse of discretion (*People v. Keller* (1966) 245 Cal. App.2d 711, 715 [54 Cal.Rptr. 154]; *People v. Henderson* (1964) 226 Cal.App.2d 160, 163 [37 Cal.Rptr. 883]). ■ It is also established that the report of the probation officer is not binding upon the trial court (*People v. Johnson* (1951) 106 Cal.App.2d 815, 816 [236 P.2d 190]; *People v. Wahrmund* (1949) 91 Cal.App.2d 258, 262 [206 P.2d 56]), and if the report contains information not proper to be determined by the court, the appellate court must assume that the trial court was not influenced by irrelevant matters (*People v. Warren* (1959) 175 Cal.App.2d 233, 247 [346 P.2d 64]).

■ Turning to the record at hand, it appears that in denying appellant's probation, the trial court did not adopt the probation officer's negative recommendation as a matter of routine, but also considered the evaluation of the psychiatric council which recommended probation. The question of probation was widely discussed in the presence and with the participation of appellant's counsel, the record clearly demonstrating that the denial was the product of the court's independent evaluation of the evidence as a whole.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 15, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.