[Crim. No. 19662. Mar. 1, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN MERTZ WARNER, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William G. Prahl, Deputy Attorneys General, John M. Price, District Attorney, and Arjuna T. Saraydarian, Deputy District Attorney, for Plaintiff and Appellant.

Jerome S. Stanley and Christopher H. Wing for Defendant and Respondent.

Nathaniel S. Colley, Kenneth M. Wells, Public Defender (Sacramento), and John F. Moulds as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**CLARK, J.**— ■ ■■■ The People appeal from an order granting defendant probation following conviction upon his plea of guilty to commission of a lewd and lascivious act upon a child under the age of 14

years. (Pen. Code, § 288.)[1] The People contend that the trial court abused its discretion by granting defendant probation. We agree and reverse the order.

In February 1975 defendant was charged with a violation of section 288 and with three violations of section 288a (oral copulation). After plea bargaining (see § 1192.5), defendant pleaded guilty to the section 288 violation and the remaining charges were dismissed on the People's motion.

The court adjourned criminal proceedings and instituted proceedings to determine whether defendant was a mentally disordered sex offender. (See Welf. & Inst. Code, § 6300 et seq.) Three psychiatrists—Dr. Whipple, Dr. Lyons and, after their reports conflicted, Dr. Galioni —were appointed to examine defendant and report on his condition. (Welf. & Inst. Code, § 6307.) Following the doctors' examinations and the filing of their reports the court found that defendant was a mentally disordered sex offender but that he could not benefit from care and treatment in a state hospital, and ordered that he be arraigned for sentencing.

Criminal proceedings being resumed, defendant was sentenced to the term prescribed by law. However, over the prosecutor's objection, the court suspended execution of sentence and ordered defendant placed on probation for five years on condition that he not be in the presence of children below the age of 15 years without responsible adult supervision and that he participate in a psychiatric treatment program approved by the probation officer.

■ The conditions under which probation may be granted are statutorily defined. "If the court determines that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved by granting probation to the person, it may place him on probation." (§ 1203, subd. (a).)

---

[1]All statutory references are to sections of the Penal Code unless otherwise specified.

The People may appeal from an "order made after judgment, affecting the substantial rights of the people." (§ 1238, subd. (a)(5).) As judgment is synonymous with the imposition of sentence (*Stephens* v. *Toomey* (1959) 51 Cal.2d 864, 870-871 [338 P.2d 182]), an order suspending execution of sentence is an order made after judgment within the meaning of the statute. (See *People* v. *Beasley* (1970) 5 Cal.App.3d 617, 630 [85 Cal.Rptr. 501]; *People* v. *Orrante* (1962) 201 Cal.App.2d 553, 556 [20 Cal.Rptr. 480].)

The trial judge has broad discretion in determining whether the statutory conditions are satisfied. (*People* v. *Wilson* (1973) 34 Cal.App.3d 524, 527 [110 Cal.Rptr. 104].) This discretion, however, is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. (*People* v. *Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794]; *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424.) Discretion is abused when granting probation "exceeds the bounds of reason, all of the circumstances being considered." (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65]; *People* v. *Russel, supra.*) That, as we shall explain, is what happened here.

■ When an abuse of discretion in granting or denying probation is claimed, it is not sufficient to answer—as defendant does here—that the trial court followed the recommendation made by the probation officer.[2] By so saying we do not intend to denigrate the role of the probation officer. The Legislature clearly assigned an important role to him when it provided that a probation report, including recommendations, is to be prepared in every felony case in which the defendant is eligible for probation and, further, that the court must "consider" the report, stating for the record that it has done so. (§ 1203.) However, having considered them, the court "may reject *in toto* the report and recommendation of the probation officer." (*People* v. *Lippner* (1933) 219 Cal. 395, 403 [26 P.2d 457]; see *People* v. *Ozene* (1972) 27 Cal.App.3d 905, 915 [104 Cal.Rptr. 170]; *People* v. *Henderson* (1964) 226 Cal.App.2d 160, 165 [37 Cal.Rptr. 883].) "The primary function served by the probation report required by section 1203 *is to assist the court* in determining an appropriate disposition after conviction." (*People* v. *Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995], italics added.) In the final analysis that determination is a matter of judgment for the court, not the probation officer. (*People* v. *Lippner, supra.*)[3]

---

[2]Nor is it entirely accurate to say that the court followed the probation officer's report here for the court, contrary to the recommendation, did not impose an extended term in county jail as a condition of probation.

[3]Although on first reading it may give that impression, *People* v. *Lippner, supra,* is not authority for the proposition that the trial judge cannot abuse his discretion if he follows the recommendations of the probation officer.

In order that they may be properly understood the troublesome passages in *Lippner* must be placed in context. The question presented in that case was whether the trial court had abused its discretion in revoking the defendant's probation. Convicted of violating the Corporate Securities Act, the defendant had been placed on probation on condition that he make restitution to those persons who had lost money through his

■ The probation officer is to make his report and recommendations based upon an investigation of the circumstances surrounding the crime and the prior record and history. of the defendant. (§ 1203.) We shall review these factors, as disclosed by the probation report and by other materials properly before the court, to determine whether they support the conclusion that there are "circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved by granting probation" to defendant.

### THE CIRCUMSTANCES SURROUNDING THE CRIME

■ Defendant pleaded guilty to committing a lewd or lascivious act upon a child under the age of 14 years. (§ 288.) Section 288 encompasses a wide range of culpable behavior. (*In re Rodriguez* (1975) 14 Cal.3d 639, 647 [122 Cal.Rptr. 552, 537 P.2d 384].) Had defendant violated the statute in a relatively minor manner (see, e.g., *People* v. *Epperson* (1935) 7 Cal.App.2d 125 [45 P.2d 359] (touching a young girl's breasts)) on a single occasion with a single victim such circumstances would be mitigating. However, defendant violated the statute in a most culpable manner—orally copulating young boys—and by his own admission he did so repeatedly for a year with at least two victims. All that can be said in his favor is that he did not use violence. In conclusion, the

illegal acts. Violation of a condition of probation was a ground for revocation then (former § 1203, subd. 2, as amended by Stats. 1931, ch. 786, § 1), as now (§ 1203.2, subd. (a)). The fact of his violation was undisputed but the defendant argued in mitigation that his failure to make restitution was excusable in light of his age, ill health and the economic conditions prevailing at the time—the Depression. The probation officer recommended revocation. His recommendation was supported by evidence in the record that the defendant had not made a good faith effort to comply with the restitution order, that he had financial resources which he was surreptitiously diverting to other ends. After reviewing this evidence, this court declared itself "unable to say that the court abused its discretion in revoking the order admitting [the defendant] to probation." (219 Cal. at p. 403.)

Now that their context has been clarified, the otherwise troublesome passages should cause no confusion. These passages are: "To hold that the court acted arbitrarily when it based its order of revocation upon the report of its probation officer would do violence to the whole scheme of the law upon the subject of probation." (219 Cal. at p. 403.) "[When the court follows the recommendation of the probation officer] its acts can in no way be subject to the criticism that they are arbitrary or without the legal discretion with which the court is invested." (*Id.*) In light of the pains this court took to point out that the probation officer's recommendation of revocation was *supported by the record*—by the undisputed fact of violation of the condition of probation, which is an express statutory ground for revocation, and by evidence rebutting the defendant's evidence of mitigation—the statements in question clearly mean nothing more than that *provided the probation officer's recommendation is supported by the record,* the court does not abuse its discretion in following it. In the present case, as we shall demonstrate, the record does not support the probation officer's recommendation.

circumstances surrounding defendant's crime clearly weighed heavily against probation.

## DEFENDANT'S PRIOR RECORD

Defendant has three prior felony convictions each of which was based on oral copulation of young boys. Defendant acknowledged these prior convictions in his interviews with the psychiatrists; they were not, however, formally alleged in the information and no findings were made thereon.[4]

Defendant was first convicted and sentenced to prison in South Dakota in 1952. He served 6 years of a 10-year term before the supreme court of that state ordered his release because he had not been informed of his right to court-appointed counsel at trial. (*State* v. *Jameson* (1958) 77 S.D. 340 [91 N.W.2d 743].) In 1960 defendant was convicted in California of violations of sections 288 and 288a and was confined first at a state hospital and then in prison. He was released on parole in 1964 and was discharged from parole in 1966. In that same year defendant was again convicted of violation of section 288. He was sent to prison, released on parole in 1972, and discharged therefrom in 1974. It was during this latest period of parole that he began committing the offenses culminating in the present conviction.

The reports also reveal that while released on bail pending trial in this case, defendant was arrested for committing another act of oral copulation in violation of section 288a. Charges flowing from that arrest were to be dismissed pursuant to the plea bargain in the present case.

We will not belabor the obvious. One can scarcely imagine a record less appropriate to probation.

## OTHER FACETS OF DEFENDANT'S HISTORY

As used in section 1203, "history" is a catchall term used to refer to the multitude of factors, in addition to the circumstances surrounding the crime and the defendant's prior record, which properly may be considered in determining whether the defendant should be granted

---

[4]Because the prior convictions were not formally charged and proven the court was not required to find this to be an "unusual case" within the meaning of former subdivisions (d) and (e) (now subd. (d)) of section 1203 in order to place defendant on probation. (*People* v. *Lo Cicero* (1969) 71 Cal.2d 1186 [80 Cal.Rptr. 913, 459 P.2d 241].)

probation. ▮▮▮ Defendant relies on two such factors as supporting the grant of probation to him. 1. Since his release from prison in 1972 defendant allegedly has embarked on a program of self-rehabilitation. 2. Of the three psychiatrists appointed to examine defendant pursuant to the mentally disordered sex offender proceedings, two were of the view that defendant would be more likely to be rehabilitated under a supervised outpatient psychiatric program than in an institution, whether a hospital or a prison.

## 1.

In support of his claim of rehabilitation defendant alleges that he has taken part in community social activities and formed new associations; that he has attended a state university for two years and is motivated and able to achieve professional status as a sociologist; and that he has responsibly performed in his regular employment. These allegations are not supported by the record.

*Participation in community social activities and formation of new associations.* As to the latter, defendant was a newcomer to the community to which he was paroled. Therefore, it was inevitable, and not a matter for either praise or blame, that he would form new associations. Defendant's only "community social activity," so far as the record indicates, was an event called "a walk for development." Defendant's involvement in this activity certainly did not demonstrate "self-rehabilitation" for he used it as an occasion to meet the children he eventually molested. Indeed, it was "community social activity" of this sort for which defendant was first committed to prison 25 years ago when he sexually abused youngsters in the Boy Scout troop of which he was the leader.

*University attendance and aspiration to become a sociologist.* The probation report characterized defendant as a "some times student." Defendant told Dr. Galioni that he had an associate of arts degree and was within 12 units of receiving a bachelor's degree in sociology.[5] However, he informed Dr. Whipple that he had stopped attending the university a year earlier. This discrepancy brings to mind Dr. Lyons' appraisal of defendant. "It was obvious that he was holding back

---

[5]In the preamble to his report Dr. Galioni emphasized that he had not had the opportunity to verify any of the information given him by defendant. The probation officer also had apparently not verified this information for he recited that defendant *"claims* to be approximately 15 units from a baccalaureate degree. The defendant *claims* an Associate of Arts Degree in liberal arts." (Italics added.)

significant facts and that what he was *not* saying was more important than what he was reporting. That is, he concealed the full truth not by out and out lying, but rather by omission of significant details, which has the same effect."

However, whether defendant was making progress towards a bachelor's degree is beside the point. We must be realistic. Defendant is a 50-year-old habitual criminal who has spent 15 of the last 25 years in prison for orally copulating young boys. Our faith in higher education is not so blind as to make us believe that defendant will abandon his lifelong degeneracy simply because he attends a university. If we had any doubt on this point it would be dispelled by the fact that defendant claims to have been attending the university while committing the present offenses.

*Responsible performance in his regular employment.*

Defendant has worked as a janitor and an alleyman in a bowling alley. The probation report characterized his employment as, not regular, but "intermittent." Indeed, defendant informed one of the psychiatrists that he had resigned the position to return to school. The "bottom line," to use an overworked term, is that whatever his professed intentions defendant was currently neither employed nor attending school.

### 2.

Each of the three psychiatrists appointed to examine defendant concluded that by reason of mental disorder defendant was so predisposed to the commission of sexual offenses that he was dangerous to the health and safety of others. (Drs. Lyons and Galioni qualified their conclusions by adding that since defendant's sexual offenses apparently were not accomplished by means of force or violence, the danger he posed was to the emotional well-being of his young victims, not their physical safety.) Unlike Dr. Whipple, Drs. Lyons and Galioni were of the opinion that defendant would not benefit from care or treatment in a state hospital but would more likely benefit from treatment in a supervised outpatient setting.

That defendant may be more likely to benefit if treated as an outpatient rather than in an institution is not dispositive. The short answer to such speculation is that defendant is not likely to benefit from treatment, regardless of the treatment setting.

In *People* v. *Feagley* (1975) 14 Cal.3d 338, 366-367 [121 Cal.Rptr. 509, 535 P.2d 373], this court noted that there is no effective treatment for sexual psychopaths. The views of two commentators were quoted as representing the consensus of the authorities. "Professor Paul W. Tappan, whose in-depth research on habitual sex offenders led to the enactment of landmark New Jersey legislation on the subject, has summarized his experience as follows: 'As compared with other types of psychological and constitutional abnormality, we are peculiarly at a loss in the handling of abnormal sex offenders. Methods of effective treatment have not yet been worked out. . . . Most psychiatrists indicate that psychotherapy of some sort should be given to sex offenders, but they are in agreement that professional staffing is not available to perform this work and that an unknown but undoubtedly very high percentage of deviates would not respond to such treatment.' (Tappan, *Some Myths About the Sex Offender* (June 1955) 19 Fed.Prob. 7, 11.) [¶] A recent large-scale study of the problem sponsored by the American Bar Association is no less pessimistic: 'Sex psychopathy legislation appears to be an example of an area where the law has assumed a state of medical (and perhaps social) advancement that has not yet been attained, particularly in relation to the question of treatment of the sexual psychopath. At present there is insufficient scientific knowledge to assure meaningful diagnosis and effective treatment—a medical problem greatly aggravated by the sociological one that personnel resources and physical facilities for sexual psychopathic patients are lacking. . . . In part such failure may be attributed to the lack of an adequate number of *trained* personnel in these facilities. But the problem appears to go deeper than that: even assuming total adequacy of staff and space resources, serious questions remain about the ability of medical science to cure or substantially improve the vast majority of sexual psychopaths.' (The Mentally Disabled and the Law (Brakel & Rock ed. 1971) p. 352.)"

Certainly defendant's sorry history raises such questions. He has been undergoing psychotherapy intermittently for over 15 years. He was in group therapy in Atascadero State Hospital and again in San Quentin Prison. He was receiving outpatient psychotherapy as a condition of parole when he committed these crimes. The matter was put into perspective by one of the two psychiatrists who were of the opinion that defendant might benefit from outpatient psychotherapy as a condition of probation. Dr. Lyons stated: "The odds are against . . . a beneficial improvement in this situation, but I think it is still within the realm of possibility." Such odds are unacceptable when the emotional well-being of children is at risk.

The paramount concern in sentencing must be the protection of society. The interests of the defendant are of legitimate but secondary concern. Granting a convicted criminal the qualified liberty of probation subjects society to the risk that it will continue to be victimized during the period when he would otherwise be confined. In determining whether to grant probation the judge must therefore satisfy himself that the risks inherent in that disposition are outweighed by the potential benefits. We are mindful that society, as well as defendant, would benefit if he were rehabilitated through psychiatric treatment while on probation. But, on this record, the chances of such rehabilitation are slight. And the danger that defendant would repeat his vicious conduct while on probation is considerable. Therefore, the trial court abused its discretion in granting him probation.

We emphasize that defendant was not a suitable candidate for probation *on this record*. However, we realize that defendant has in effect been on probation ever since judgment was entered nearly two years ago and that his conduct in the interim is not a matter of record. For all we know defendant may have defied the odds by leading a blameless life during this period, compiling an excellent employment record and pursuing his professed academic goal with diligence and distinction. If defendant has taken advantage of this opportunity to prove himself, he may now be more deserving of probation. Therefore, if defendant renews his application for probation, a current probation report should be obtained or, in the alternative, defendant should be referred to the Department of Corrections for a diagnostic study pursuant to section 1203.03.

The order suspending execution of sentence and granting probation is reversed and the cause is remanded.

Richardson, J., Devine, J.,* and Brown (G. A.), J.,† concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Acting Chairperson of the Judicial Council.

†Assigned by the Acting Chairperson of the Judicial Council.

**TOBRINĚR, Acting C. J.**—I dissent.

In granting probation to defendant in the instant case, the trial court followed the recommendations of both the probation officer who conducted an in-depth study of defendant's background and two of the three psychiatrists who interviewed him in connection with the dispositional proceedings. Despite the fact that the trial court's disposition was thus clearly and fully supported by the expert opinions before it, the majority conclude that the court abused its discretion and overturn its order. In reaching this conclusion, I believe that the majority have ignored the appropriate standard of appellate review, and have improperly substituted their own view of the appropriate disposition for that of the trial court. Under the proper standard of review, I think that the trial court order should be affirmed.

To begin with, it is axiomatic that in reviewing an order granting probation, an appellate court enjoys no prerogative to render a "de novo" determination as to the wisdom or advisability of granting probation in a particular case. (See, e.g., *People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65]; *People* v. *Henderson* (1964) 226 Cal.App.2d 160, 163-164 [37 Cal.Rptr. 883]; *People* v. *Fields* (1933) 131 Cal.App. 56, 57 [20 P.2d 988].) Thus, even when an appellate court is of the view that a challenged probationary order is not the "preferable" order in the prevailing circumstances, the order cannot be set aside unless the record demonstrates that the court acted arbitrarily or capriciously. (See *People* v. *Lippner* (1933) 219 Cal. 395, 400-403 [26 P.2d 457].)

Although the majority cite *People* v. *Lippner, supra,* for the proposition that the trial court may reject the recommendation of the probation officer, they pay little heed to the principal holding of *Lippner* which in fact directly contradicts their conclusion in this case. In *Lippner,* a case arising during the 1930's depression, a trial court followed a probation officer's recommendation and revoked a defendant's probation because the defendant had not complied with a condition of probation requiring him to reimburse his creditors. Although on appeal this court noted that the record would have supported a more lenient result, and that in its view such leniency would have been "preferable," the court nonetheless affirmed the trial court's decision.

In reaching that conclusion, the *Lippner* court stated: "[A] wide discretion in these matters is necessarily lodged in the trial court. The

latter is guided in a large measure by the reports of the probation officer. The latter officer is provided by law to assist the court in dealing with probation cases. *To hold that the court acted arbitrarily when it based its order of revocation upon the report of its probation officer would do violence to the whole scheme of the law upon the subject of probation.* We do not mean to intimate that the court should substitute the judgment of the probation officer in place of its own. The court in the final analysis must act upon its own judgment in these matters. In doing so, it may reject *in toto* the report and recommendation of the probation officer, and make its decisions in total disregard of that officer and of his recommendations. On the other hand, as is frequently, and we may say, as is usually, the case, the court may adopt a course in harmony with the conclusions reached by the probation officer. *In the event it pursues this latter course, its acts can in no way be subject to the criticism that they are arbitrary or without the legal discretion with which the court is invested.*" (Italics added.) (219 Cal. at p. 403.)

In the instant case, of course, the trial court followed the recommendation of the probation officer in granting probation.[1] In finding an abuse of discretion under these circumstances, the majority sub silentio overrule *Lippner's* basic holding.

At a minimum, *Lippner*, and indeed all decisions which review a trial court's discretionary action, require that an appellate court uphold the lower court's action as long as a "fairly debatable" or rational justification sustains the action taken, even if as a question of first impression the appellate court might feel inclined to reach a different decision. (*People* v. *Henderson, supra,* 226 Cal.App.2d 160, 163-164; *People* v. *Fields, supra,* 131 Cal.App. 56, 57. See also *Gonzales* v. *Nork* (1978) 20 Cal.3d 500 [143 Cal.Rptr. 240, 573 P.2d 458]; *Harrison* v. *Sutter St. Ry. Co.* (1897) 116 Cal. 156, 161 [47 P. 1019].) In the instant case, the majority do not suggest that the probation report contained serious inaccuracies, omissions or observations devoid of factual support which undermined the reliability or probative value of the probation officer's recommendation. (Cf. *People* v. *Peterson* (1973) 9 Cal.3d 717, 726-727 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908-909 [112 Cal.Rptr. 745].) Moreover, the majority do not—and could not properly

---

[1]Contrary to the intimation of the majority opinion (fn. 2, *ante,* p. 683), the trial court did grant probation on substantially the same conditions recommended by the probation officer. Although it did not impose an extended term in county jail as recommended, the trial court made clear that it did not do so because it felt the 122 days defendant had already served in county jail while the case was pending satisfied this condition.

—suggest that the present record lacks substantial evidence to support the recommendation of the probation officer and the decisión of the trial court.

As we have noted, in this case the probation officer relied upon the expert opinions of psychiatrists who examined the defendant, and upon accurate information concerning the defendant's criminal record, his social situation, educational aspirations, and employment history. The officer considered the arguments against granting probation, studied the psychiatric evaluations and solicited comments from persons in the community before arriving at a considered recommendation in favor of probation. Under the traditional and well-established standard of appellate review, I do not believe that this court can properly find an abuse of discretion in the trial court's reliance upon the officer's recommendation in these circumstances.[2]

In reaching a contrary conclusion, the majority depart from the established standard of review of a trial court's discretionary decision. Although initially acknowledging the trial court's "broad discretion" in granting or denying probation (p. 683, *ante*), the majority proceed to conduct an independent de novo review of the probation report and other materials before the trial court "to determine whether they support the conclusion that there are 'circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved by granting probation' to defendant." (P. 684, *ante*.) The majority, however, present neither argument nor precedent to support this radical departure from the accepted standard of appellate review.

In the instant case, the probation officer and the trial court recognized that in view of the defendant's past criminal record, probation would not normally be appropriate. After considering the recommendations of the majority of psychiatrists who had examined defendant and reviewing defendant's recent academic, employment and social activities, however, both the probation officer and the court below concluded that a closely supervised probation, with mandatory psychiatric treatment, provided the most promising disposition, both in terms of rehabilitating defendant

---

[2]My research has disclosed only one prior California decision, *People* v. *Beasley* (1970) 5 Cal.App.3d 617, 630-633 [85 Cal.Rptr. 501], in which an appellate court reversed a trial court order granting probation. In *Beasley,* the Court of Appeal found that the trial court had abused its discretion primarily because it had failed to give adequate consideration to the probation report.

and serving society's long-term interest in reducing the possibility of future criminal behavior. I would affirm the judgment.

Mosk, J., and Sullivan, J.,* concurred.

Respondent's petition for a rehearing was denied March 30, 1978. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.