[No. F005438. Fifth Dist. May 21, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL F. FRANCO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V and VI.

**COUNSEL**

Joel M. Basta for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Anthony L. Dicce, Judy Kaida and Richard Thomson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Manuel F. Franco appeals from a judgment denying him probation and sentencing him to the middle base term of six

years for violation of Penal Code[1] section 288, subdivision (a) (lewd and lascivious act upon or with the body of a child under age fourteen). In a former appeal to this court (*People* v. *Franco,* No. F003720) the guilt judgment was affirmed and the cause was remanded for resentencing because in substance the trial court mistakenly assumed appellant was ineligible for probation under section 1203.066. Because the information did not contain the charging allegations required by section 1203.066, this court held that section was inapplicable and appellant was statutorily eligible for probation. We held: "[T]he decision to grant or deny probation was to be based on the general principles found in section 1203, subdivision (b) ('If the court determines that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved by granting probation to the person . . .'), rule 414, California Rules of Court, and case law." Because appellant requested probation, this court also directed that the trial court obtain a medical report pursuant to section 288.1.[2]

At the sentencing hearing after remand on March 15, 1985, the court had before it the previous report of the probation officer dated December 5, 1983, the previous medical report of Dr. Charles A. Davis dated January 7, 1984, together with the supplementary report of the probation officer dated March 4, 1985, and the medical report of Dr. James R. Richmond dated January 30, 1985.

Appellant's conviction was based upon his plea of guilty to count one of a three-count information pursuant to a plea bargain resulting in the dismissal of counts two and three.

### FACTS

On May 8, 1983, appellant, his girlfriend, Isabel S., and the victim, Eva M., Isabel's eight-year-old daughter, lived in a residence in Kings County. Appellant and Isabel were lying in bed when appellant called Eva to stand by him near the bed. Appellant raised Eva's nightgown, rubbed his hand on her legs, between her knees and thighs, and asked her to lie on top of him, stating, "lay with me, your mother does not know how to do it." Isabel, overhearing the conversation, called the sheriff's department.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Section 288.1 provides:

"Any person convicted of committing any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years shall not have his sentence suspended until the court obtains a report from a reputable psychiatrist, or from a reputable psychologist who meets the standards set forth in Section 1027, as to the mental condition of that person."

Isabel told the sheriff's officer that appellant had molested her daughter in the past and that she was very concerned for her daughter's safety. When questioned by the sheriff's officer, the victim stated that she did not lie on top of appellant but, instead, told him that she had to use the bathroom. Appellant responded by telling the victim he would kill her if she told on him.

The victim also stated that prior to this date appellant had "Put his thing in my thing." When asked for an explanation she stated, "His private, where he goes to the bathroom." When asked what she meant by "her thing," she pointed to her genital area.

The original probation officer's report reflected a statement by the victim that she had this happen to her "starting back when she was five, six and seven years of age."

A physical examination of the victim revealed that she had a perforated hymen, which could have been caused by molestation.

During the presentencing interview appellant admitted the present charge, though he initially denied to the officers that he ever touched the minor sexually or asked her to touch his penis.

Appellant further elaborated in his statement to Dr. Davis. Dr. Davis' report shows:

"I tried to explain to the Defendant that I needed him to give more complete explanations of the events that took place, that just saying the word masturbation did not tell me whether he masturbated the girl, the girl masturbated him, or they both masturbated each other, etc. I also asked him how this got started.

"The Defendant was very reluctant to give any information. Finally, he says, 'It got started about two years ago. We just went to the room and I asked her to pull her pants down. I asked her to masturbate me and she did. Everytime her mom would go to the store or the doctor or something . . . we took our clothes off and she would start masturbating me. I used to touch her—feel her in her bottom part.' He said that he did ejaculate. He said that on one occasion he tried to put his penis in her vagina, but he says that he knows that he couldn't put it in. He would put his penis between her legs. He put his finger in her vagina a couple of times. He felt of her butt. He asked her not to tell her mom."

To Dr. Richmond, appellant related:

"He acknowledged that he had entered a plea of guilty to child molesting and stated that this charge had involved the molestation of his eight year old stepdaughter over a period of approximately a year. He used to tell her to 'play with (his) thing' and 'go up and down on it.' He wanted her to do this with her mouth also but she refused. She did agree under duress to do it with her hand, and this happened 'a lot of times,' perhaps twenty times. He was aware that she did not want to do it and he would 'act like I was mad or something' and she would go ahead. He denied that he specifically threatened her with harm but recognizes that in his appearing angry she might well have assumed that [sic] would do something to harm her if she did not agree. He denied that he had tried to have intercourse with her and then contradicted himself and said that on one occasion he did try to 'put my thing in her thing. I don't know what happened,' but he denies that he completed an act of intercourse, saying that he was 'afraid I would hurt her.' He did touch her genitalia, would masturbate her, trying to get her stimulated. She did become stimulated at times but so far as he knows she did not have climax. He would reach climax both when she was playing with him and when he was playing with her. . . . He did not think the sexual play would hurt his stepdaughter, particularly inasmuch as she appeared to enjoy it 'sometimes.' He noted there was an occasion when she spontaneously reached over and touched his penis and other occasions when she would ask him 'whose [sic] better, me or mom?'"

The report of the probation officer further shows that on the date of the offense appellant was 30 years old, he had completed the 10th grade at Corcoran High School, and he claimed he could neither read nor write. He had steady employment as a heavy equipment operator, earning approximately $2,000 per month. He was married at a young age. The marriage produced four children, two of whom are girls, who at the time of the incidents herein were 12 and 10 years of age and living with their mother. He had been divorced from the children's mother for approximately four years and had been living with Mrs. S. without the benefit of marriage during this time. Appellant informed the probation officer he had no intention of reestablishing his relationship with Mrs. S., although he had been thinking of reestablishing his relationship with his former wife and family.

Appellant had no prior criminal record, expressed remorse for his conduct, and acknowledged he needs treatment. There was no suitable treatment program in Kings County, though Fresno County has such a program available to Fresno County residents. If granted probation, appellant, through his counsel, expressed an intention to move to Fresno County and enroll in the program. The court, in denying probation, assumed the program would be available to appellant should he be placed on probation.

Both probation officers' reports recommended that probation be denied and appellant be sentenced to the middle base term of six years.

Both doctors (Dr. Davis and Dr. Richmond) recommended probation be granted.

In denying probation and sentencing appellant to state prison, the trial judge said in pertinent part:

"I am going to put some things in the record. I do find that Dr. Davis and Dr. Richmond, it's clear from their opinions, based upon their examinations that they're recommending that he be granted probation and placed in an out-patient treatment facility. There is a treatment facility in Fresno which is available subject to a relatively minor matter, that is moving to another county to avail oneself to the program. And that would be certainly a strong factor in mitigation—the fact that he appears at this time to express remorse and he wishes to avail himself of an out-patient facility.

"We have weighed against that circumstances which militate against the grant of probation. Such as the duration of the conduct involved. We had a person, who was approximately five, possibly six at the latest, when these molestations occurred. One specific act was, I think, attempting to have intercourse. That was not completed because he—I believe the information was from Mr. Franco that he knew that it was not possible. But the conduct involved was certainly not of a minor touching variety. It was a more intense series of activities, but short of intercourse. This occurred for approximately two years.

"It's obviously apparent that mental harm to a victim such as this age would be likely. There is a reference in the report that children from school know of this incident or incidents and are making fun of her, which would add to her mental harm.

"We have also the statement mentioned in the probation officer's report that if she told anyone, her mother or otherwise, that he would kill her. This is the minor child." And then again, in referring to appellant's abuse of trust, the court stated: "He abused that trust, and proceeded to use her as a sexual object for approximately two years."

The court commented upon the doctors' reports: "The course of conduct and what occurred and the fact that the doctors state that he is not a risk to—at one point that he is not a risk to other children if not imprisoned. That is their prognosis. Certainly, they're fallible. They are certainly more

trained than I am, so I am not going to say they are wrong, but I am not going to say that their prognostication is written in gold either."

The court then pointed out what it considered to be a contradiction in Dr. Richmond's report regarding whether these acts may be repeated, stating:

"I do note an interesting contribution [*sic*] that I have noted and I want to be more specific about, and it's pointed out in line—I think I mentioned it before, but I should compare the two statements because they are interesting. Doctor Richmond's report, January 30th, third line from the bottom, I am reading 'The crime was not a product of unusual circumstances, such as great provocation, and the circumstances which happened could occur again.'

". . . . . . . . . . . . . . . . . . . .

"It appears that there is certainly some question in Dr. Richmond's mind as to what Mr. Franco would do. I think his conclusion is apparent that he feels that there is no danger. But I am really putting into the record my concern about the unpredictability of it all."

## DISCUSSION

The issue before the court is whether the trial court abused its discretion in denying probation. The exercise of such discretion will not be disturbed on appeal unless there is a clear abuse of discretion. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 216 [152 Cal.Rptr. 141, 589 P.2d 396]; *People* v. *Goodson* (1978) 80 Cal.App.3d 290, 295 [145 Cal.Rptr. 489].) Discretion is abused only when the order granting or denying probation is irrational or arbitrary and exceeds the bounds of reason, all circumstances being considered. (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].)

In sum, the court enumerated the following reasons for denying probation: 1. Appellant's conduct was serious and occurred repeatedly over approximately a two-year period. 2. The victim suffered mental harm. 3. The crime was not a product of unusual circumstances. 4. Appellant took advantage of a position of trust to molest his victim. 5. The court's concern whether appellant would molest other children.

Appellant argues the trial court committed error in several particulars.

## PART I

### *Improper Consideration of Facts Underlying Dismissed Counts*

Count one pertained to the event which occurred on May 8, 1983. Counts two and three, dismissed pursuant to plea bargain, pertained to the course of conduct over the period of approximately one year before May 8, 1983.

 Relying on *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], appellant contends the trial court improperly considered facts underlying dismissed counts. In *People* v. *Harvey,* defendant pleaded guilty to two counts of robbery with use of a firearm as part of a plea bargain under which a third count, charging an unrelated robbery, was dismissed. In sentencing defendant to the upper term, the trial court considered facts relating to the dismissed count, and defendant appealed. The California Supreme Court affirmed the judgment of conviction but remanded for re-sentencing, stating: "In our view, under the circumstances of this case, it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count three for purposes of aggravating or enhancing defendant's sentence. Count three was dismissed in consideration of defendant's agreement to plead guilty to counts one and two. Implicit in such a plea bargain, we think, is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count. The People have cited no contrary authorities. Although *People* v. *Guevara* (1979) 88 Cal.App.3d 86, 92-94 [151 Cal.Rptr. 511], upheld the authority of the sentencing court to take into account certain facts underlying charges dismissed pursuant to a plea bargain, those facts were also *transactionally related* to the offense to which defendant pleaded guilty. As the *Guevara* court carefully explained, 'The plea bargain does not, expressly or by implication, preclude the sentencing court from reviewing all the circumstances relating to Guevara's *admitted* offenses to the legislatively mandated end that a term, lower, middle or upper, be imposed on Guevara commensurate with the gravity of his crime.' (P. 94, italics in original.) In contrast, as we have noted, the present case involved a robbery alleged in dismissed count three which was unrelated to, and wholly separate from, the admitted robberies charged in counts one and two." (*Id.,* at pp. 758-759.)

This language should be interpreted in light of the context in which it appears. The *Harvey* rule, declaring an implied plea bargain term, is based on the reasonable expectations of the parties to the bargain. A defendant who pleads guilty to robbery may well have a reasonable expectation that the dismissed, unrelated counts will not be recycled to his det-

riment. ▆▆ On the other hand, a defendant who pleads guilty to violating section 288 can have no such reasonable expectation about dismissed counts when his plea is viewed in the context of a statute (§ 288.1) requiring a report on his current mental condition as it bears on his suitability for probation.[3]

The Legislature has not required as a condition precedent to probation that the court obtain a report from a specified expert on the mental condition of a person convicted of robbery. In contrast, section 288.1 requires a comprehensive report for "[a]ny person convicted of committing any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years . . . ." The report should include a comprehensive analysis of defendant's mental condition and an evaluation of the feasibility of rehabilitation. Moreover, in many section 288 cases, the prosecution will invoke section 1203.066, subdivision (c) of which requires the section 288.1 report include a consideration, inter alia, of the feasibility of the defendant's rehabilitation in a recognized treatment program and the threat of physical harm to the child (victim) if the defendant is not imprisoned.

Thus, in denying or granting probation in a section 288 case, one of the primary concerns is the defendant's mental condition. To limit the expert preparing the psychiatric report to the specific facts of the particular offense(s) would hamper both the expert and the sentencing court. In making an accurate and comprehensive evaluation of a defendant's mental condition, it is self-evident that neither the psychiatrist nor the court should be limited to facts surrounding the admitted offense but must consider the totality of a defendant's behavior and course of conduct of which the particular offense(s) logically is a part.

▆▆ ▆▆ This exception to the general rule of *Harvey* that facts underlying dismissed counts should not be considered for the purpose of denying probation falls squarely within the proviso recognized in *Harvey* that the general rule must give way when it would prevent the trial court from considering all factors necessary to an informed disposition of the offense to which defendant pleaded guilty. (*People* v. *Harvey, supra,* 25 Cal.3d at p. 758; *People* v. *Klaess* (1982) 129 Cal.App.3d 820 [181 Cal.Rptr. 355].)

---

[3]Arguably, we could resolve the *Harvey* point by holding that acts committed in a course of conduct are transactionally related to each other. In our view, the exception for transactionally related acts is but one exception in which consideration of dismissed counts does not offend the reasonable expectation of the parties and, indeed, is essential to an informed disposition. The instant case presents another such exception. Thus, we need not agonize over whether acts committed over a substantial period are transactionally related within the meaning of *Harvey*.

Appellant herein admitted to the psychiatrist that he committed numerous lewd and lascivious acts upon the body of the victim in addition to the acts underlying the admitted offense. The doctors necessarily considered the totality of these acts in evaluating appellant's mental condition. Since it is the judge who must ultimately evaluate the psychiatrist's recommendation regarding probation, the court must necessarily consider facts underlying dismissed counts in evaluating defendant's suitability for probation. Were the court limited to considering only the acts underlying the admitted offense, it would be impossible for the court to determine whether appellant is a suitable candidate for probation and would inhibit the trial court from discharging its statutory duty.

There was no error.

PART II-PART VI*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Woolpert, J., and Hamlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 10, 1986.

---

*See footnote *ante*, page 342.