[No. A083097. First Dist., Div. Two. Nov. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT BRUCE LAMB, Defendant and Appellant.

**COUNSEL**

Sugarman & Cannon and Scott A. Sugarman for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, George F. Hindall III and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Robert Bruce Lamb, who was charged by information with 12 counts of child molestation, pleaded guilty to 3 counts of committing lewd acts on a

child under the age of 14 (Pen. Code, § 288, subd. (a)).[1] He was sentenced to the upper term of eight years on each count, with the terms to be served concurrently. Appellant obtained a certificate of probable cause to challenge both the validity of his plea and the legality of his sentence.

Appellant contends: (1) both the court and the prosecutor violated the plea agreement and the principles established in *People* v. *Harvey* (1979). 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], thereby entitling appellant to have his convictions reversed; (2) appellant's plea was induced by misinformation by the trial court, rendering his plea involuntary; (3) the trial court had no jurisdiction over two of the three counts of conviction because the statute of limitations had expired on those two offenses; and (4) the admission at sentencing of allegations that appellant had committed misconduct more than twenty years previously, where such allegations had never been adjudicated, violated appellant's due process rights to a fundamentally fair sentencing hearing.

We conclude that the judgment must be reversed and appellant's plea set aside for misadvisement regarding the applicability of *People* v. *Harvey*, *supra*, 25 Cal.3d 754. So as to guide the trial court and the parties on remand, we address appellant's other contentions and reject his claims regarding the statute of limitations and denial of due process at the sentencing hearing.

## II. Factual and Procedural Background

All 12 counts charged against appellant related to the same victim, Randy, who was 18 years old when he went to the police in August 1997 to report that appellant had molested him in 1990 and 1991 when he was 11 and 12 years old.[2] Randy began taking piano lessons from appellant when he was 10 years old. At first, his lessons were one hour long and took place on a weekday after school. In July 1990, when Randy was 11, the schedule changed to a two-hour session at appellant's house on Saturday mornings every other week.

During the first two-hour session, appellant told Randy that music was like sex in that they both had a build-up and a climax. He also showed Randy some pornographic magazines. At the next lesson, appellant again showed Randy pornographic magazines, which caused Randy to have an

---

[1] Unless otherwise indicated, all statutory references hereafter are to the Penal Code.

[2] The facts are taken from the transcript of the preliminary hearing since appellant pleaded guilty on the day trial was to begin. The evidence was presented by testimony from the police officer relating what Randy had told her. Randy did not testify.

erection. Randy then pulled down his pants, and appellant measured his penis.

Randy said that appellant masturbated Randy's penis during piano lessons on about 10 separate occasions between July and December 1990. During the first hour there would be a piano lesson. During the second hour, appellant would have Randy lie on the couch. Randy would pull his own pants and underwear down, and appellant would apply Vaseline to Randy's penis and proceed to masturbate Randy's penis with his hands. Randy never reciprocated by masturbating appellant.

Randy's last piano lesson took place in August 1991, when Randy was 12. While Randy was lying on the couch, appellant asked him if he would like to try something different. When Randy agreed, appellant put the Vaseline away, knelt beside Randy and orally copulated him. This act upset Randy, and he stopped taking piano lessons from appellant.

After Randy talked to the police, he made several calls to appellant at the request of the police. The call made on August 22, 1997, which was recorded, was played for the magistrate during the preliminary hearing. Randy told appellant that he was thinking of talking to a therapist about their relationship. Appellant told Randy he hoped he would not do so because the therapist would have to tell the police, and appellant's life would be ruined. Appellant admitted that his conduct with Randy was a "mistake on my part for which I grievously apologize." Appellant said what he did was "wrong," but there was no detailed discussion of what had occurred between Randy and appellant. Appellant told Randy he regretted what he had done to him and had been "straight and narrow ever since."

## III. DISCUSSION

### A. Alleged Harvey Violation

#### 1. Plea and Sentencing

As previously noted, there were 12 counts alleged against appellant. Count 1 alleged continuous sexual abuse consisting of oral copulation and masturbation (§ 288.5). The other 11 counts alleged lewd conduct in violation of section 288, subdivision (a), with counts 2-11 referring to masturbation and count 12 to oral copulation.

On January 28, 1998, appellant signed a plea agreement indicating that he would plead guilty to counts 2, 3, and 12. The form indicated that the only

promises and representations made to appellant were that counts 4 and 5 would be dismissed with *Harvey* waivers, that count 1 would be dismissed in light of the plea and section 654, and that the prosecutor would strike the probation ineligibility allegation (§ 1203.066, subd. (a)(9)). The form also stated that counts 6 through 11 would be dismissed outright, but that the dismissal was not part of the plea bargain.

The court confirmed with appellant the terms of the bargain and stated: "Now, you understand with regard to the statement that you just affirmed, that by Harvey waiver is meant that while counts will be dismissed, the Court and the probation officer may take into consideration the facts underlying those counts in determining what an appropriate sentence to Counts Two, Three and 12 may be?" Appellant said he understood that and proceeded to enter his pleas. After accepting the guilty pleas, the court referred appellant for a psychological evaluation regarding his suitability for probation, pursuant to section 288.1.

On May 1, 1998, the prosecutor submitted a sentencing statement that summarized appellant's history with Randy. The statement mentioned that Randy believed appellant had masturbated him at least ten times, but it described only four specific instances: one in which appellant measured Randy's penis, one in which appellant masturbated Randy on the living room couch, one in which appellant and Randy each masturbated himself while watching a pornographic movie, and the incident in which appellant orally copulated Randy. The prosecutor argued that appellant should be denied probation and sentenced to the aggravated prison term of eight years to be served concurrently.

In announcing its decision, the court stated it was confining its statements to what "has come from Mr. Lamb's own mouth." The court then referred to statements by appellant contained in the reports submitted by psychologists. In explaining its decision to deny probation, the court stated that, although it did not have any particular reason to disbelieve the conclusion of the three psychologists that appellant may be amenable to treatment,[3] it was "certainly a matter that's open to question, given the nature of Mr. Lamb's conduct over the past 20 years, by his own admission and his absolutely unbelievable . . . failure to comprehend the enormity of the harm that he was wreaking upon these minors." The court discussed the factors affecting the decision whether to grant or deny probation, commenting that the seriousness of the crime was markedly worse than others of its type since it involved "skin-on-skin conduct, including oral copulation, that occurred on, at least by Mr.

---

[3]All reports, including that of the probation department, recommended that appellant be placed on probation.

Lamb's own admission, three separate occasions." In finding that appellant should be sentenced to the aggravated term of eight years, the court cited the callousness involved, noting that appellant "knew what he was doing was wrong" and "had plenty of opportunity to stop with respect to the three crimes in question and he didn't." It ordered the terms to run concurrently in view of appellant's lack of prior record, age, and health.

2. *Argument*

■ Appellant contends that the court and the prosecutor violated *People v. Harvey, supra,* 25 Cal.3d 754, which held that a court may not consider the facts underlying charges dismissed as part of a plea bargain to aggravate or enhance the defendant's sentence. Appellant contends that the prosecutor violated the plea bargain by relying on all of the dismissed counts to argue for denial of probation and imposition of the aggravated term instead of limiting her argument to the two dismissed counts as to which he entered a *Harvey* waiver. He claims the court violated *Harvey* by considering the prosecutor's argument.

We agree with appellant that the prosecutor could not avoid the *Harvey* rule simply by characterizing dismissed counts 6-11 as not part of the plea bargain. The charges were dismissed at the time appellant entered his guilty plea, and there is nothing to indicate they would have been dismissed if appellant had not pled guilty.

We do not agree, however, that the *Harvey* rule was violated. First, we observe that *Harvey* involved an unrelated and wholly separate robbery charge that had been dismissed. *Harvey* itself noted that facts surrounding offenses that are transactionally related to the admitted offense may be considered by the sentencing court. (*People* v. *Harvey, supra,* 25 Cal.3d at p. 758.) The *Harvey* rule is based on the reasonable expectations of the parties to the bargain: "Implicit in such a plea bargain, we think, is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (*Ibid.*) The *Harvey* rule has been held inapplicable to defendants who plead guilty to violating section 288 because they can have no reasonable expectation regarding dismissed charges in light of section 288.1's requirement of a report on their current mental condition as it relates to suitability for probation. (*People* v. *Bustamante* (1992) 7 Cal.App.4th 722, 725-726 [9 Cal.Rptr.2d 244]; *People* v. *Franco* (1986) 181 Cal.App.3d 342, 349-350 [226 Cal.Rptr. 280], review den.)

This proposition was first set forth in 1986 by the Fifth District in *People* v. *Franco,* where Presiding Justice G. A. Brown explained that, although a

defendant who pleads guilty to robbery may well have a reasonable expectation that the dismissed unrelated counts will not be recycled to his detriment, such is not true of a defendant who pleads guilty to violating section 288. "[A] defendant who pleads guilty to violating section 288 can have no such reasonable expectation about dismissed counts when his plea is viewed in the context of a statute (§ 288.1) requiring a report on his current mental condition as it bears on his suitability for probation." (*People* v. *Franco, supra,* 181 Cal.App.3d at p. 350.) Section 288.1 requires a comprehensive report for "[a]ny person convicted of committing any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years . . . ."

"Thus, in denying or granting probation in a section 288 case, one of the primary concerns is the defendant's mental condition. To limit the expert preparing the psychiatric report to the specific facts of the particular offense(s) would hamper both the expert and the sentencing court. In making an accurate and comprehensive evaluation of a defendant's mental condition, it is self-evident that neither the psychiatrist nor the court should be limited to facts surrounding the admitted offense but must consider the totality of a defendant's behavior and course of conduct of which the particular offense(s) logically is a part." (*People* v. *Franco, supra*, 181 Cal.App.3d at p. 350.)

Division Three of our court adopted the *Franco* court's reasoning in *People* v. *Bustamante, supra*, 7 Cal.App.4th 722, another case involving a plea of guilty to child molestation. Presiding Justice White relied squarely on the reasoning of *Franco* in finding *Harvey* inapplicable in light of the requirement of a report on the defendant's mental condition for the court's consideration in determining whether to grant probation. (*Id.* at p. 724.)

Other cases have found *Harvey* inapplicable in comparable situations. In *People* v. *Klaess* (1982) 129 Cal.App.3d 820 [181 Cal.Rptr. 355], the Third District found no violation of *Harvey* when a defendant who pleaded guilty to being an accessory after the fact to murder complained that the trial court considered facts relative to the dismissed murder charges. The court concluded that the dismissed charges were inseparably and integrally a part of the offense, since it is the intentional act of aiding with knowledge of the principal's crime for which an accessory is punished. The *Harvey* rule was also found inapplicable in a juvenile wardship case where ". . . statutory mandates and good sense require consideration of all relevant circumstances when deciding the level of restriction to be imposed, even those related to dismissed allegations." (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684 [58 Cal.Rptr.2d 632].)

We agree with the *Franco* line of authority and conclude that a defendant who is eligible for and requests probation can have no reasonable expectation about dismissed counts in section 288 cases inasmuch as the court is required by section 288.1 to order a report on his mental fitness for probation. In such a situation, not only may the court consider the dismissed counts, but also the prosecutor may comment on any subject properly and necessarily covered by a section 288.1 report. Accordingly, we find that neither the court nor the prosecutor violated the *Harvey* rule in this case.

## B. *Alleged Misadvisement*

■ Appellant argues that, if *Harvey* is inapplicable to section 288 cases, then his plea is invalid because the court misled him about the dismissed charges. We agree. While accepting appellant's plea, the court stated: "Now, you understand with regard to the statement that you just affirmed, that by Harvey waiver is meant that while counts will be dismissed, the Court and the probation officer may take into consideration the facts underlying those counts in determining what an appropriate sentence to Counts Two, Three and 12 may be?"

Both the court and the prosecutor incorrectly assumed that the *Harvey* rule applied. This was misleading. Since *Harvey* was inapplicable, there could be no such thing as a "*Harvey* waiver" to counts 4 and 5. Thus, the probation department could comment on the whole course of conduct covered in the section 288.1 report. Additionally, the prosecutor could comment on that conduct and the court could consider it in its sentencing decision.

Appellant was thus subjected to a substantial misadvisement about the consequences of his plea. Accordingly, the judgment must be reversed. (See *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872].) To be valid, a guilty plea must be based upon a defendant's full awareness of the relevant circumstances and likely consequences of his action, including the validity of any commitments made to him by the court, the prosecutor, and his own attorney. (*Brady* v. *United States* (1970) 397 U.S. 742, 755 [90 S.Ct. 1463, 1472, 25 L.Ed.2d 747]; *People* v. *McCary* (1985) 166 Cal.App.3d 1, 9 [212 Cal.Rptr. 114].) That degree of awareness was clearly absent here.

## C. *Statute of Limitations*

■ Appellant contends that the trial court had no jurisdiction over two of the three counts of conviction because the statute of limitations had expired on those two offenses. Appellant raised this claim in a motion to set

aside the information pursuant to section 995. The trial court denied the motion in a lengthy order. Appellant sought writ review of the ruling, which we denied. (*Lamb* v. *Superior Court* (Jan. 26, 1998) A081127 [nonpub. opn.].)

Appellant pleaded guilty to counts 2, 3, and 12 of the information. Counts 2 and 3 alleged that appellant had masturbated Randy between 1990 and 1991 in violation of section 288, subdivision (a). Count 12 alleged that appellant had orally copulated the victim in 1991, also in violation of section 288, subdivision (a). The usual six-year statute of limitations for these offenses, section 800, had expired by the time the complaint was filed in September 1997. The complaint charged, however, that the case was being brought pursuant to section 803, subdivision (g), which provides that when a person of any age reports to a California law enforcement agency that while he was under the age of 18, he was the victim of a crime described in section 288, subdivision (a), the People may file a criminal complaint within one year of the date of the report. (§ 803, subd. (g)(1).)

1. *Alleged Improper Pleading*

As a preliminary matter, appellant argues that his conviction of counts 2 and 3 must be reversed because the prosecutor did not allege the applicability of section 803, subdivision (g), to those counts in the information. The information alleged as to count 12 that the statute of limitations was extended under section 803, subdivision (g), but there was no specific allegation as to counts 2 and 3. Counts 2 through 11 contained identical charges that appellant on or about 1990 through 1991 committed a lewd and lascivious act upon a minor under the age of 14 in violation of section 288, subdivision (a). Each count further alleged that the offense was a serious felony. Following count 11, the information alleged:

"It is further alleged that at the time of the commission of the above offenses said defendant, Robert Bruce Lamb, occupied a position of special trust, to wit: teacher, and committed an act of substantial sexual conduct, to wit: masturbation of said victim by said defendant, within the meaning of Penal Code section 1203.066 (a)(9).

"Prosecution of the charged crimes is commenced pursuant to Penal Code section 803, subdivision (g). The district attorney further alleges that:

"On August 4, 1997, John Doe reported to a law enforcement agency that he, while under the age of 18 years, was the victim of a sexual crime as specified in Penal Code section 803, subdivision (g).

"The limitation period specified in section 800 and/or 801 has expired as to that crime.

"The crime involved substantial sexual conduct, to wit: masturbation of the victim by the defendant.

"There is independent evidence that clearly and convincingly corroborates the victim's allegation, to wit: four other people have been interviewed and they indicate that they too were sexually molested by the defendant when they were children. Additionally, defendant has made taped admissions regarding said conduct.

"*The enhancements herein alleged against the above named defendant, Robert Bruce Lamb, are hereby charged with respect to each of the counts hereinbefore set forth, as to counts two through eleven and by reference, the same is hereby made a part of each of said count.*" (Italics added.)

The People concede that the information incorrectly referred to the extended statute of limitations allegation as an enhancement rather than an allegation, but they argue that such a mistake is a nonprejudicial minor error in labeling that does not warrant reversal. We agree. It is well settled that a defendant is not entitled to reversal based on nonprejudicial defects in form (§§ 960, 1258, 1404). Appellant cannot reasonably contend that this minor error in labeling failed to provide him with notice that the extended statute of limitations was being alleged as to counts 2 through 10 as well as count 11. Indeed, all of appellant's arguments have assumed as much. (See *People v. Carr* (1988) 204 Cal.App.3d 774, 780, fn. 7 [251 Cal.Rptr. 458] [defendant not entitled to have enhancements stricken based on typographical error denominating prior conviction under wrong statute number].)

## 2. *Alleged Waiver of Statute of Limitations*

■ The People argue that appellant waived the statute of limitations when he pleaded guilty. They rely on *Cowan v. Superior Court* (1996) 14 Cal.4th 367 [58 Cal.Rptr.2d 458, 926 P.2d 438], where the Supreme Court held that a defendant may waive the statute of limitations and agree to be held liable for a time-barred offense. The defendant in *Cowan* was charged with murder, for which there is no statute of limitations. Pursuant to a plea bargain, he entered a plea of no contest to voluntary manslaughter. After he had entered his plea, but before sentencing, the prosecutor moved to set aside the plea on the ground that the statute of limitations had run on voluntary manslaughter and could not be waived. The trial court set aside the plea, and the defendant filed a petition for writ of mandate. The Supreme

Court held that the statute of limitations could be expressly waived by the defendant when it is for his benefit, but limited this holding to instances of true waiver, which it defined as the intentional relinquishment or abandonment of a known right. (*Id.* at p. 371.)

The narrowness of the holding in *Cowan* was recently reaffirmed by the Supreme Court in *People* v. *Williams* (1999) 21 Cal.4th 335 [87 Cal.Rptr.2d 412, 981 P.2d 42], where the court declined to overrule the line of cases holding that the statute of limitations may be asserted at any time. The court emphasized the limited nature of the exception it had adopted in *Cowan* and refused to extend it to make the statute of limitations an affirmative defense. Instead, the court held that a defendant may not inadvertently forfeit the statute of limitations and be convicted of a time-barred charged offense.

The *Cowan* exception is inapplicable in this case. Appellant did not expressly waive the statute of limitations, nor would it have been to his benefit to have done so. The present case falls within the general rule allowing the statute of limitations to be raised at any time.

### D. *Applicability of Extended Statute of Limitations*

 Appellant contends that the extended statute of limitations does not apply to the masturbation alleged as to counts 2 and 3. He concedes its applicability to the oral copulation charge in count 12.[4]

The extended statute of limitations is set forth in section 803, subdivision (g), which provides as follows: "(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5. [¶] (2) This subdivision applies only if both of the following occur: [¶] (A) The limitation period specified in Section 800 or 801 has expired. [¶] (B) *The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation.* No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals." (Italics added.)

---

[4]The general history and framework of the extended statute of limitations provision are discussed in *People* v. *Frazer* (1999) 21 Cal.4th 737 [88 Cal.Rptr.2d 312, 982 P.2d 180], which rejected claims that it violated constitutional ex post facto principles or substantive due process. *Frazer* did not, however, address the statutory interpretation question presented here.

Substantial sexual conduct is defined in section 1203.066, subdivision (b), to mean "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."

At issue is the meaning of the term "excluding masturbation that is not mutual." Appellant contends the phrase is plain and unambiguous and that "mutual" means reciprocal, i.e., when sexual partners masturbate each other. Appellant further argues that, even when the language is not clear, courts must adopt the interpretation more favorable to the defendant.

 The fundamental goal of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, we first look to the words of the statute, giving the language its usual, ordinary import. The words of the statute must be construed in context, keeping in mind the statutory purpose. Statutes or statutory sections relating to the same subject must be harmonized to the extent possible. Where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation. Both the legislative history and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *San Francisco Internat. Yachting etc. Group* v. *City and County of San Francisco* (1992) 9 Cal.App.4th 672, 680 [12 Cal.Rptr.2d 25].) Ambiguities are not to be interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. (*People* v. *Cruz* (1996) 13 Cal.4th 764, 783 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

 Subdivision (g) was added to section 803 in 1993. (Stats. 1993, ch. 390, p. 2226.) The legislation was first introduced in 1991 by Assembly Member Boland as Assembly Bill No. 638. (Assem. Final Hist. (1991-1992 Reg. Sess.) p. 502.) The purpose, according to its author, was to extend the statute of limitations in instances of child sexual abuse when the victim does not report the offense until he or she becomes an adult. As first introduced, the bill did not limit the offenses to those involving substantial sexual conduct. (Assem. Bill No. 638 (1991-1992 Reg. Sess.), as introduced, Feb. 20, 1991.) That limitation was added by amendment in the Assembly on January 17, 1992. (Assem. Amend. to Assem. Bill No. 638 (1991-1992 Reg. Sess.) Jan. 17, 1992.) The exception for "masturbation that is not mutual" was added by the Senate on June 18, 1992, as recommended by the Senate Committee on the Judiciary. (Assem. Final Hist. (1991-1992 Reg. Sess.) p. 502.) The amendment was apparently prompted by the following comment contained in a report prepared for a June 9, 1992, hearing of the Senate

Committee on the Judiciary: "Under the new exception to the statute of limitations created by this bill, the offense must involve substantial sexual conduct; this would be defined to mean penetration of the vagina or rectum by the penis of the offender or by any foreign object, oral copulation, or masturbation of either the victim or the offender. [¶] Opponents suggest that masturbating in the presence of a 17 year old should not be considered substantial sexual conduct under this bill. *Perhaps the definition of substantial sexual conduct [should] be amended so that masturbation would be included in the definition only if the perpetrator masturbated the victim or coerced the victim to masturbate the perpetrator.*" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 638 (1991-1992 Reg. Sess.) as amended Jan. 17, 1992, p. 3, italics added.)

As noted above, nine days after the hearing for which this report was prepared, the "masturbation which is not mutual" language was added to the legislation. No other explanation for it, beyond the sentence (italicized above) in the prehearing report, appears anywhere in the legislative history.

Assembly Bill No. 638 was approved by both houses and the Governor (Assem. Final Hist. (1991-1992 Reg. Sess.) p. 502), but it never went into effect because it was joined with a second bill, Senate Bill No. 25, which the Governor vetoed. (Stats. 1992, ch. 921, § 2, p. 4422; Sen. Final Hist. (1991-1992 Reg. Sess.) p. 34.) The final version of Assembly Bill No. 638 was reintroduced during the 1993-1994 legislative session as Assembly Bill No. 290 and was enacted at that time. (Assem. Final Hist. (1993-1994 Reg. Sess.) p. 276; Stats. 1993, ch. 390, pp. 2224-2226.)

The People argue that the italicized statement in the Senate Judiciary Committee analysis leaves no doubt that the Legislature intended masturbation of the minor by the perpetrator to constitute mutual masturbation and qualify for the extended limitations period if the other requirements are met. This view is supported by a comment in the 1993 report of the Assembly Committee on Public Safety on Assembly Bill No. 290: "Under the new exception to the statute of limitations created by this bill, the offense must have involved 'substantial sexual conduct' described in section 1203.066 to mean: 'penetration of the vagina or rectum by the penis of the offender or by any foreign object, oral copulation, masturbation of either the victim or the offender.' AB 290 includes language added by the Senate Judiciary Committee last year [i.e., 1992], excluding masturbation which is not mutual from the definition of 'substantial sexual conduct.'" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 290 (1993-1994 Reg. Sess,) p. 3.)

Appellant argues that these legislative committee analyses provide little guidance as to the intent of the Legislature because they do not indicate that

the rest of the legislators shared that view. ■ Legislative committee reports and analyses generally have been found appropriate items of consideration in determining legislative intent. Such items are to be distinguished from statements of individual legislators as to their motives or understanding in voting for a bill. The latter are not proper subjects of consideration unless they are a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ The legislative committee analyses quoted above provide, in our view, useful guidance as to the intent of the committee in drafting the amendment at issue and recommending its adoption.

Which brings us back to the meaning of the word "mutual," or at least that meaning as used in this context. To be sure, "[t]he ordinary definition of 'mutual' is 'reciprocally given and received.' " (*Ulene* v. *Murray Millman of California* (1959) 175 Cal.App.2d 655, 663 [346 P.2d 494], citing Webster's New Collegiate Dict., p. 556.) This is also the view of many authoritative dictionaries of the English language, including legal dictionaries, which include an element of reciprocity in their primary definition of "mutual."[5]

However, and as the People point out, "masturbation" may refer either to the stimulation of one's own genitals or to the stimulation of another's genitals. (Webster's New World Dict. (3d college ed. 1988) p. 833.) Since masturbation may involve one participant or two, the People contend that the phrase "masturbation that is not mutual" refers to masturbation involving one person, i.e., self-masturbation. Thus, they continue, the term "mutual masturbation" could include one sexual partner's stimulation of another or two people stimulating themselves in each other's company. In support of this contention, the People note, correctly, that although "mutual" can mean "reciprocal," it can also mean "joint" or "shared in common." (Webster's New World Dict., *supra*, at p. 896.)[6]

We agree with the People's contention because (1) their definition of the term "mutual" ("shared," etc.) is consistent with the purpose of the statute in

---

[5]See, e.g., 10 Oxford English Dictionary (2d ed. 1989) page 154 ("Possessed, entertained, or performed by each (of two persons, things, classes, etc.) towards or with regard to the other; reciprocal"); Webster's Third New International Dictionary (1965) page 1493 ("given and received in equal amount"); Black's Law Dictionary (6th ed. 1990) page 1020, column 1 ("[c]ommon to both parties. . . . each acting in return or correspondence to the other; given and received"); A Dictionary of Modern Legal Usage (2d ed. 1995) page 578 ("reciprocal; directed by each toward the other(s)").

[6]See also Webster's Third New International Dictionary of the English Language (1965) page 1493 (including as definitions of the word "shared in common," "enjoyed by each," and "joint"); Webster's New World Dictionary of the American Language (2d ed. 1974) page 940 ("shared in common; joint"); 10 Oxford English Dictionary, *supra*, at page 155 ("[p]ertaining to both parties; common").

which the words appear (and, of course, our definition relates only to that statute) and (2) the interpretation advanced by appellant is clearly inconsistent with that purpose. As noted above, the Legislature was concerned that, if it adopted the definition of "substantial sexual conduct" set forth in section 1203.066, the proposed extended statute of limitations would apply to an offender who merely masturbated in the presence of another. The only satisfactory explanation for the exclusion with which we are dealing is a legislative effort to address that concern. Despite the fact that the concept of mutuality often connotes an element of reciprocity, it is also often used to describe an arrangement or activity shared by two or more people—e.g., a mutual fund.

Appellant nevertheless argues that his proffered interpretation of mutual masturbation is the only logical one. He reasons as follows: (1) "substantial sexual conduct" as defined in section 1203.066 includes "masturbation of either the victim or the offender"; (2) that definition already covered masturbation of the victim by the offender or of the offender by the victim; (3) in amending the bill, the Legislature intended to be more restrictive; (4) thus, the phrase "excluding masturbation that is not mutual" must mean something else, i. e., reciprocal masturbation.

This argument is based on a false premise. The problem of concern to the Legislature was not that the extended statute of limitations would include masturbation by the offender of the victim or of the offender by the victim, but that it would *also* include masturbation by the offender *of himself* in the presence of the victim, because the definition of substantial sexual conduct in section 1203.066 includes "masturbation of either the victim or the offender" and therefore does not require the sexual act to be performed by one person upon another.[7]

Finally, the definition urged by appellant would obstruct a clear legislative purpose, if not also render the statute absurd. If, as appellant claims, the "mutual masturbation" referred to in section 803, subdivision (g), excludes the unilateral masturbation of the victim by the offender, it would by parity of reasoning also exclude the masturbation of the offender by the victim. It is impossible to think the Legislature did not intend the extended statute of limitation to apply to the circumstances in which masturbation of an offender by a victim would most commonly be chargeable as a crime, i.e., where the victim is a minor or an unconsenting adult acting under compulsion. In either of those circumstances, masturbation would clearly be within

---

[7]Indeed, a defendant's act of touching a child's thigh with his hand, while the defendant was masturbating, has been found to constitute a lewd act under section 288. (*People* v. *Diaz* (1996) 41 Cal.App.4th 1424, 1427-1428 [49 Cal.Rptr.2d 252]; see generally, *People* v. *Martinez* (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].)

the legislative concept of "substantial sexual conduct" worthy of subjection to the extended statute of limitations.

Appellant further relies on the rule requiring strict construction of criminal statutes, sometimes referred to as the "rule of lenity." (See *People* v. *Bransford* (1994) 8 Cal.4th 885, 895-896 [35 Cal.Rptr.2d 613, 884 P.2d 70] (conc. and dis. opn. of Kennard, J.).) ■ The rule has been stated as follows: "If the statutory language is ambiguous and susceptible to two plausible interpretations, we must, because this is a criminal statute, adopt the one more favorable to the defendant." (*Id.* at p. 895.) This rule is applicable in situations of true ambiguity, where there is no indication of legislative intent. It does not, however, "trump" legislative intent, which is paramount. (See *People* v. *Cruz, supra,* 13 Cal.4th at p. 783; *People* v. *Jones* (1988) 46 Cal.3d 585, 599-600 [250 Cal.Rptr. 635, 758 P.2d 1165].) ■ In this case, the rule of lenity must yield to the expression of legislative intent we have found in the history of the statute's enactment.

We conclude that appellant's acts in masturbating the victim fall within the definition of mutual masturbation set forth in section 803, subdivision (g), and thus qualify for the extended statute of limitations described in that section.

E. *Due Process*

■ Appellant contends that his right to due process and a fundamentally fair sentencing hearing was violated by the admission of written statements by other alleged victims and their parents regarding misconduct alleged to have occurred more than 20 years ago. Two former students submitted letters to the court and gave oral statements regarding appellant's inappropriate sexual conduct toward them when they were taking piano lessons 20 years earlier. Their parents also wrote letters to the court and gave oral statements. These statements all took the position that it was time for appellant to pay for the harm he had done and that he is a threat to other children. None of the statements was made under oath or subject to cross-examination.

Appellant objected to the admission of this evidence on the ground that the statements were from strangers to the instant offenses and concerned events some 20 years ago. The prosecutor argued that the statements were relevant to the question of whether to grant probation. The sentencing court ruled that the evidence was admissible on the issue of whether to grant probation because it was relevant to the factors set forth in rule 414, California Rules of Court. The court concluded it had discretion to admit such evidence under rule 437, California Rules of Court.

■ Appellant concedes that a sentencing court may consider a broad range of information in deciding whether to grant probation in a particular case. Due process does not require that a criminal defendant be afforded the same evidentiary protections at sentencing proceedings as exist at trial. (*Williams* v. *New York* (1949) 337 U.S. 241, 251 [69 S.Ct. 1079, 1085, 93 L.Ed. 1337]; *People* v. *Arbuckle* (1978) 22 Cal.3d 749, 754 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171].) A sentencing judge may consider responsible unsworn or out-of-court statements concerning the convicted person's life and characteristics. (*Williams* v. *Oklahoma* (1959) 358 U.S. 576, 584 [79 S.Ct. 421, 426, 3 L.Ed.2d 516]; *People* v. *Arbuckle, supra,* 22 Cal.3d at p. 754.) Fundamental fairness, however, requires that there be a substantial basis for believing the information is reliable. (*People* v. *Arbuckle, supra,* 22 Cal.3d at pp. 754-755.)

■ Appellant argues that the age of the evidence alone renders it unreliable. He relies on principles developed in cases involving the admissibility of uncharged offenses on the issue of guilt or innocence under Evidence Code sections 352 and 1101 and on the admissibility of prior convictions for impeachment purposes. The reasoning of those cases does not necessarily apply to the sentencing hearing where different considerations are at play. The sentencing court is authorized to consider a much broader range of material than that allowed at trial on the issue of guilt or innocence. (*People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 333 [197 Cal.Rptr. 509].) In addition to age, appellant points to the fact that the statements and testimony were not made under oath or subject to cross-examination.

None of the cited factors, however, make the evidence inherently unreliable. Appellant had notice that the letters and statements would be submitted. Indeed, he asked the court to strike and not consider such evidence. Appellant, himself, presented numerous character reference letters and several witnesses. There can be no question about the reliability of the basic charges made by these two other victims. The psychological reports prepared pursuant to section 288.1 contain references to admissions made by appellant of his improper conduct with them, as well as with other piano students.

The sentencing court in a child molestation case is obliged to consider the totality of the defendant's behavior as it bears on his mental condition, treatability, and suitability for probation. (§ 288.1.) Even if there were any error in considering the letters and statements in question, such error could not have been prejudicial in light of appellant's admissions in the section 288.1 reports to having sexually abused or behaved inappropriately with the two students who gave statements to the court, as well as with a number of other students.

## IV. DISPOSITION

The judgment is reversed and the guilty plea vacated.

Kline, P. J., and Lambden, J., concurred.

On December 16, 1999, the opinion was modified to read as printed above.