Filed 7/16/13  P. v. Fullmer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

|  |  |
|---|---|
| THE PEOPLE, | C070583 |
| Plaintiff and Respondent, | (Super. Ct. No. SF10349) |
| v. | |
| MARTIN ZANE FULLMER, | |
| Defendant and Appellant. | |

Defendant Martin Zane Fullmer entered a negotiated plea of no contest to committing a lewd act on a child under the age of 14 years (Pen. Code, § 288, subd. (a)-- count I; unless otherwise stated, all statutory references that follow are to the Penal Code) in exchange for dismissal of another count  charging the same conduct on the same victim on another occasion (count II) with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*) and a sentencing lid of the midterm of six years.  With the prosecutor's agreement, defendant reserved the right to argue for probation.  The court denied probation and sentenced defendant to state prison for the midterm of six years.

1

Defendant appeals. He contends the trial court abused its discretion in denying probation and in declining to impose the mitigated term of three years. We affirm the judgment.

FACTS AND PROCEEDINGS

The facts are taken from the probation report. The parties stipulated and defendant agreed that the factual basis for his plea was set forth in the sheriff's report which is summarized in the probation report. Part of the sheriff's report appears in the record on appeal. The probation officer also referred to the attachments and supplemental reports to the sheriff's report as well but the same are not in the record on appeal. Although documents including the "MDIT" interviews with the victims and the supplemental sheriff's reports dated August 11, 13, 17, 24, 25, 2010 and September 1, 2010, were provided to a medical expert, the same are not part of the record on appeal.

On August 10, 2010, a hospital social worker contacted the sheriff's office, reporting that defendant had been admitted for a self-inflicted gunshot wound after his "granddaughter(s) told their mother he had sexually molested them." The social worker then spoke with defendant's spouse and her daughter about the allegations. The next day, deputy sheriffs spoke with the victims' mother who admitted that her seven-year-old and 10-year-old daughters had reported being molested by defendant.

On August 13, 2010, a child support services social worker met with the victims and their mother. The 10-year-old victim reported that defendant "knelt down next to her and touched her just above the knee. [Defendant] then used either one or two fingers ([the child] wasn't sure) and placed them inside 'there,' " pointing to the vaginal area of an anatomical picture. She also reported that defendant had previously molested her when she was nine years old. The seven-year-old victim reported that she had gone with defendant to a drive-in movie. When they were driving back, he put his hand down her pants and rubbed her vagina. She demonstrated how he did that using a stuffed bear. The victims' mother (defendant's daughter) reported that defendant had orally copulated

2

her when she was nine or 10 years of age. She also reported defendant had touched her inappropriately on other occasions. She claimed that she had told her mother (defendant's spouse).

On August 26, 2010, a sheriff's deputy interviewed defendant's spouse who eventually admitted that the victims' mother (defendant's daughter) had reported being molested by defendant.

## DISCUSSION

In denying probation and imposing the midterm of six years, defendant contends that the trial court considered improper factors and ignored other, proper, factors. We find no abuse of discretion.

The probation report recommended a state prison commitment for the midterm of six years, although suggesting that there were circumstances in aggravation that would justify an upper term. When the probation officer interviewed defendant, defendant indicated a willingness to comply with the terms and conditions of probation, stating that he "would never risk going through this again." The probation officer noted that defendant had had years to reflect on his molestation of his daughter and only expressed willingness to seek treatment after repeating the behavior with his granddaughter and being held responsible. He admitted that he considered himself an alcoholic " 'in the sense that [he does not] moderate [his] drinking. If [he] drink[s], [he] get[s] drunk and it's usually associated with [his] depression.' " He claimed that no one knew about his drinking which he kept a secret.

At sentencing, the court stated that it had read and considered the amended probation report, defendant's statement, his statement in mitigation, the victim impact statement by the victim's mother, letters filed in support of defendant, and the opinions of the three experts appointed pursuant to section 288.1. The court began by stating its tentative decision to deny probation for the following reasons: the seriousness of the

3

offense, noting that defendant had digitally penetrated the victim; the victim's vulnerability, citing not just her age but the fact that defendant waited until he thought she was asleep; his infliction of emotional injury, citing the breach of trust between a grandfather and granddaughter; the likelihood the victim will require counseling in the future; defendant was an active participant; there were no unusual circumstances for commission of the crime; lack of criminal sophistication or professionalism but some planning in that defendant went into the victim's room at night when he thought she was sleeping; and taking advantage of a position of trust or confidence (the victim and her younger sister had been visiting defendant and their grandmother).

The court stated that it had considered defendant's lack of a prior criminal record and his willingness to comply with terms and conditions of probation, noting his age, education, family background and ties, and that he had begun counseling. The court stated that it had "serious concerns" whether defendant would be able to comply, however, due to his history of alcohol abuse and the psychological and emotional issues he faced as discussed in the expert opinions. The court noted that imprisonment would have a significant effect on defendant based on his age, health, and lack of a prior prison term but that he had no dependents who would be impacted. The court recognized that defendant had expressed remorse. The court also stated that it "appears to the Court that [he] does continue to minimize the extent of his conduct and at times appears more concerned with the impact of his behavior on himself as opposed to the impact his behaviors might have on the victim" which had been demonstrated as recently as in his interview with Dr. Amezaga, the last expert to interview defendant.

The court disagreed with the medical assessment that defendant was at a low risk to reoffend since defendant had minimized his conduct against the victim as well as the victim's sister and mother. The court also concluded that the experts did not fully address the molestation of defendant's other granddaughter (the victim's sister) or his own daughter (the victim's mother) at age nine which included oral copulation. The

4

court did consider as a mitigating factor that defendant was amenable to sexual offender treatment and that he was willing to participate in outpatient treatment. The court noted that all experts recommended a grant of probation. The court also noted that it had considered the general objectives of sentencing and the considerations in granting probation. The court determined that there was no substantial likelihood that defendant would succeed on probation.

The court tentatively chose the midterm, finding no circumstances in mitigation related to the crime. The court noted that defendant had no record and acknowledged wrongdoing at an early stage. The court determined that defendant had led a productive life and that the victim's mother did not desire prison. The court noted that defendant had sought counseling after the discovery of his molestation of the victim. In aggravation, the court found the victim was particularly vulnerable due to her age. The court found some planning by defendant and that he took advantage of a position of trust. The court found that defendant minimized the extent of his molest of the victim of the offense of which he was convicted.

The prosecutor discussed the facts underlying defendant's offense, noting the digital penetration, and that defendant had previously touched the victim in the same manner on another occasion and had rubbed her genitals over her clothing on three more occasions. The prosecutor also discussed defendant's molest of the victim's sister when she was visiting him out of state and his molest of his daughter when she was nine or 10 years of age which involved rubbing, touching and oral copulation. When the daughter told her mother (defendant's spouse), defendant's spouse confronted defendant and he admitted touching his daughter but blamed it on sleep walking and claimed he had mistaken his daughter for his spouse.

The prosecutor noted that the defense-hired expert, Dr. Wuehler, ignored the evidence of defendant's conduct involving the other granddaughter and his own daughter, in concluding that defendant was not a pedophile and was at a low risk to reoffend. The

5

prosecutor claimed "there were jurisdictional as well as statute of limitations issues that prevented the charging of those other victims" but that the uncharged conduct would have been presented at trial under Evidence Code section 1108.

The prosecutor cited the report of Dr. Kelly, a licensed clinical psychologist. The prosecutor noted that Dr. Kelly concluded that defendant met the diagnosis criteria of a pedophile.

The prosecutor also cited the report of Dr. Amezaga who concluded that defendant did not meet a diagnosis of pedophilia. The prosecutor argued that the history for Dr. Amezaga's report was provided by defendant and his attorney; defendant reported that he had no history or interest in child pornography and that there had been no other lewd acts when he had had a supervisory duty over other children when he was involved in the Boy Scouts and his church. But, the prosecutor noted, Dr. Amezaga concluded that defendant met the criteria as an "opportunistic sex offender" and, although concluding as well that defendant's risk of reoffending was low, repeated several times in his report that defendant "must forever be prohibited from having unsupervised access or control over a minor of either gender, be they family or non-family members." The prosecutor argued that the psychologist's agenda was to treat while the criminal justice system aims to achieve justice which includes punishment. The prosecutor labeled defendant a "predator who is a danger to children and has been for 28 years." The prosecutor stated that the People had agreed to a sentencing lid of six years "to spare the young victims from the burden of testifying against their grandfather."

The victim's mother spoke at sentencing. She stated that after listening to what had been said at sentencing and having to relive the events, she wanted to revise her written statement (wherein she indicated that she did not desire a prison sentence for defendant). Although she forgave defendant, she had no desire for reconciliation. She wanted defendant to get help but did not know what was best. She thought prison would

6

"harden him" but she did not know whether he would "take the steps to get the help he needs" if granted probation and that concerned her.

Defense counsel argued that the court was under the "same misimpression" as the probation officer was in that defendant never had a hearing concerning the allegations involving his other granddaughter. Defense counsel claimed that defendant was "perfectly honest" and "acknowledge[d] the conduct involving his daughter that occurred 28 years ago while at the same time doing so at his peril when it's then used against him." Defense counsel recognized that the court could consider other victims for purposes of a grant or denial of probation but objected to the court considering uncharged conduct to "enhance" the sentence to a midterm. Defense counsel objected to any finding that there was digital penetration, arguing that the victim described the touching as rubbing.

With respect to the reports of the experts, defense counsel noted that Dr. Kelly had never previously prepared such a report. Defense counsel argued that none of the reports supported a finding that defendant is a danger to the community or that he is likely to reoffend. Defense counsel argued for probation, noting that defendant had already served more than one year in custody, that there was an opportunity for rehabilitation through outpatient treatment, that he had a place to live in a retirement community, and that he would have to register as a sex offender. With respect to remorse, defense counsel claimed defendant was "in anguish over the acts he has done" and had attempted suicide twice. Defense counsel suggested that had defendant received counseling 28 years ago, "this would not have happened." Defense counsel argued that defendant's crime was a crime of access and that he was not a predator and there was no danger of repeating the offense.

In the event probation was denied, defense counsel sought the mitigated term, citing defendant's lack of a criminal record, his acceptance of responsibility, and his

7

remorse. Defense counsel complained that probation had failed to fulfill its obligation to discuss the counseling and treatment the victim was receiving.

The court responded it recognized the dismissed count involved the same victim but noted that that "still is concerning to the Court that there are two different events." The court believed there was sufficient and reliable information to consider the uncharged conduct involving the victim's sister and the victim's mother for purposes of determining whether to grant probation and stated that the same would not be considered for the purposes of selecting the term. The court also stated its belief that there was sufficient and reliable information that there had been digital penetration of the victim. Although agreeing that the criteria did not necessarily define defendant as a pedophile, the court determined that even Dr. Amezaga's report failed to sufficiently address other risk factors, defendant's anti-social history and chronic substance abuse, the fact there was more than one child victim, and that the victims were less than 11 years of age.

With respect to remorse and defendant's suicide attempts, the court noted that defendant had had a long history of a major depressive disorder and anxiety issues and lacked empathy for the victim, citing the psychological evaluations. Hearing nothing to change its indicated sentence, the court denied probation and imposed a six-year term for "the reasons previously stated."

Defendant argues that the court's conclusion that the offense was more serious than other violations of section 288, subdivision (a), was based on its unsubstantiated belief that defendant had digitally penetrated the victim. Defendant complains that the court ignored other facts (there was no physical harm, claim of fear, threat or use of force, or effort to keep the victim silent) which made the offense less serious.

Defendant also complains that the court's finding that defendant had minimized his conduct and lacked remorse was not supported by the record and that the court's citation of the victim's vulnerability was improper since the victim's age (under 14 years) is an element of the offense. Relying on the contrary opinions of the medical experts,

8

defendant argues that the court erroneously minimized his lack of a prior criminal history and his background, education and age. In citing defendant's abuse of alcohol, the trial court, defendant claims, ignored the fact that defendant had sought counseling early and on his own, suggesting that he would refrain from the use of alcohol. And in imposing the midterm instead of the mitigated term, the trial court identified the same factors which, defendant contends for the same reasons, constituted an abuse of discretion.

We review a court's sentencing decisions, including granting or denying probation, for an abuse of discretion. The trial court possesses broad discretion to determine whether a defendant is eligible for probation. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

" 'All defendants are eligible for probation, in the discretion of the sentencing court [citation], unless a statute provides otherwise.' [Citation.] 'The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion. [Citation.]' [Citation.] 'In reviewing [a trial court's determination whether to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.' [Citation.]" (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311.)

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b).) We review the trial court's sentencing choice for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

Section 1203.067, subdivision (a), provides in relevant part, as follows:

9

"(a) Notwithstanding any other law, before probation may be granted to any person convicted of a felony specified in Section . . . 288 . . . , who is eligible for probation, the court shall do all of the following:

"(1) Order the defendant evaluated pursuant to Section 1203.03, or similar evaluation by the county probation department.

"(2) Conduct a hearing at the time of sentencing to determine if probation of the defendant would pose a threat to the victim. . . .

"(3) Order any psychiatrist or psychologist appointed pursuant to Section 288.1 to include a consideration of the threat to the victim and the defendant's potential for positive response to treatment in making his or her report to the court. . . ."

Section 288.1 provides, in relevant part, as follows: "Any person convicted of committing any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years shall not have his or her sentence suspended until the court obtains a report from a reputable psychiatrist, from a reputable psychologist who meets the standards set forth in Section 1027, as to the mental condition of that person."

A sentencing court may consider any dismissed count and the prosecutor can comment on any matter covered by the report. (*People v. Lamb* (1999) 76 Cal.App.4th 664, 674.) "[A] defendant who is eligible for and requests probation can have no reasonable expectation about dismissed counts in section 288 cases inasmuch as the court is required by section 288.1 to order a report on his mental fitness for probation. In such a situation, not only may the court consider the dismissed counts, but also the prosecutor may comment on any subject properly and necessarily covered by a section 288.1 report." (*Ibid*.)

Here, the sentencing court was entitled to consider defendant's entire history in determining whether to grant probation. Another count which originally had been charged in the complaint involved defendant's other granddaughter. Because the offense

occurred in another state, the prosecutor represented that the charge was dismissed for jurisdictional reasons, not that it could not be substantiated. The police report reflects that the other granddaughter had described an incident of molest. Further, the prosecutor noted that charges involving defendant's daughter were not brought in view of the statute of limitations. At sentencing, defense counsel stated that defendant had "acknowledge[d] the conduct involving his daughter that occurred 28 years ago." The prosecutor also represented that she planned to introduce the evidence of uncharged conduct pursuant to Evidence Code section 1108.

As far as the seriousness of the offense of which defendant was convicted, the victim's description of the offense as reflected in the probation report (which summarized the sheriff's report and its attachments and supplemental reports) supports the trial court's determination of digital penetration. As far as vulnerability, the court cited not only the victim's age but also the fact that the victim was sleeping. "The law recognizes that the younger a child is, the more he or she will be harmed by inappropriate sexual activity. '[A] victim's extremely young age together with other circumstances like the time and location of the offense can establish "particular vulnerability" as an aggravating factor.' [Citations.]" (*People v. Tuck* (2012) 204 Cal.App.4th 724, 734.) As far as remorse, the trial court could properly read defendant's letter as if he is more concerned about himself than the victim. We have read defendant's letter as well. Further, in defendant's letter, he stated that he "intended no violence or harm to [the victim], but I also knew what I was doing was wrong." Despite the legal definition of the crime, defendant did not believe he committed a violent offense. Finally, defendant abused alcohol, drank until he got drunk, and attempted suicide when his granddaughters told their mother what he had done.

Defendant simply argues the factors defense counsel argued in the trial court. The trial court considered the mitigating factors defense counsel cited, found there were factors in aggravation and mitigation, and denied probation and chose the midterm. The

trial court's findings indicate that it considered all relevant factors in making its sentencing choices which were well within the bounds of its discretion.  This court does not reweigh the factors or substitute its judgment for that of the trial court.  Defendant has failed to demonstrate that the trial court's denial of probation and imposition of the midterm was arbitrary or irrational.

DISPOSITION

The judgment is affirmed.


      HULL      , Acting P.  J.


We concur:


      BUTZ      , J.


      HOCH      , J.