Filed 6/26/26  P. v. Duran CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE ANGEL DURAN,<br><br>        Defendant and Appellant. | A172592<br><br>(Riverside County Super. Ct. No. INF1900887) |

Jose Angel Duran appeals after a jury convicted him of three counts of committing lewd and lascivious acts with a child under 14 years old (Pen. Code, § 288, subd. (a)).[1]  The trial court denied probation and sentenced him to 10 years in prison.  Duran contends the trial court erred by denying his request for a continuance of sentencing, because the trial court had not received a section 288.1 psychological report or section 1203.03 evaluation, which Duran contends are required by section 1203.067, subdivision (a).  He also briefly contends that the denial of the continuance was error because he had not yet received trial transcripts to prepare a new trial motion and that

---

[1] Undesignated statutory citations are to the Penal Code.

1

the trial court's denial of probation was arbitrary and not supported by the record.  We find no error and affirm.

## BACKGROUND

In November 2018, Jane Doe was 10 years old.  Her family was friends with Duran's family.  Doe referred to Duran as her uncle.

Doe was at Duran's house one day while Duran worked on Doe's mother's car.  While Doe's mother was in the house, Doe went outside to get a slime kit from the car.  Duran pushed Doe against the car, reached around her from behind and touched her vagina with a lot of force.  He stopped when Doe's mother came outside looking for her.

Later that day, Doe and one of Duran's daughters were playing with slime in the bathroom.  Duran sent his daughter to get a bag for the slime.  Duran pushed Doe against the sink and the wall, reached around her from the back, and touched her vagina and butt.  He stopped when he heard his daughter's footsteps.

A week or two later, Duran picked up Doe, her siblings, and Duran's children from school.  Doe sat in the middle of the front bench seat, next to Duran.  Doe had her backpack on her lap.  Duran reached underneath it to caress Doe's upper thigh and touch her vagina.  Doe moved away from Duran to stop it.

Duran told Doe that the touching was a tickling game and stayed between them.  The touching was over Doe's clothes.

Doe told her mother, who contacted law enforcement.  An investigator called Duran to arrange an interview.  Duran said

2

that Doe's mother had talked to Duran's wife, so he was waiting for the investigator's call.  He also said, "You always have to listen to a child," and that it was a "hard subject."

Duran was charged with three counts of committing a lewd and lascivious act on a child under 14 years old in violation of section 288, subdivision (a).  Under Evidence Code section 1108, the prosecution played a video of a forensic interview of Doe in which she described certain other acts of abuse.  In one instance, Duran told Doe to sit on his lap.  Doe could feel what she believed was his finger on her buttocks.  On other occasions, Duran pinched Doe's buttocks, touched her thighs, and used his thumbs to touch her vagina.  Duran took the stand in his defense.

On June 26, 2024, a jury convicted Duran of all three counts.  The trial court originally set sentencing for August 23, 2024.  On August 15, 2024, Duran moved to continue the sentencing because Duran's counsel had not yet received a copy of the probation department's sentencing report.  The trial court granted the motion on August 23, 2024, and continued the sentencing to November 1, 2024.  Duran remained in custody.

On October 24, 2024, Duran moved for another continuance.  His counsel said he had received the probation sentencing report on October 18, 2024.  But his counsel pointed out that a section 1203.3 evaluation had not been received and the probation report said the probation department could not recommend probation because it had not received a section 288.1 report.  Duran asked the court to order those evaluations and

3

continue the sentencing until the probation department could give a recommendation as to probation suitability.

The probation report stated that it seemed from the crime report and statements by Doe's mother that Duran had not taken responsibility for his actions and mutual acquaintances continued to blame the victim for Duran's legal troubles.[2]  Doe's mother had said that Doe fled from a grocery store after seeing Duran there and that many family members and friends labeled Doe a liar.

On October 30, 2024, Duran submitted a statement in mitigation and asked the court to sentence him to probation.  He argued that the contact Doe described was substantially less than in other instances of the same crime, in that there was no bare skin touching, prolonged contact, or contact made under threat.  He cited his lack of any felony or violent or serious misdemeanor convictions.  He acknowledged that the probation report had said he was not remorseful.  But he said this was untrue and said that during the call with the investigator he had said he felt bad that Doe was going through this.

---

[2] The probation report was placed in the confidential clerk's transcript, but Duran cites and relies on these confidential materials without seeking to file his brief under seal.  We treat this as a waiver of the confidentiality.  (*People v. Coddington* (2000) 23 Cal.4th 529, 617, fn. 38, overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069 & fn. 13 and superseded by statute on other grounds as stated in *People v. Zamudio* (2008) 43 Cal.4th 327, 355–356; see Cal. Rules of Court, rule 8.47(c)(2) [to maintain confidentiality parties can move to file a document under seal].)

On November 1, 2024, the trial court denied Duran's motion for a continuance. It recognized that the section 288.1 report was essential if the court wanted to grant probation. But the court had reviewed the factors in rule 4.414 of the California Rules of Court and did not intend to grant probation. The court recited the facts that Duran inflicted physical or emotional injury, the victim was vulnerable, Duran was an active participant, the manner in which the crime was carried out demonstrated sophistication or professionalism, Duran took advantage of a position of trust, and he had not demonstrated any remorse. The court also noted that it had received a Static-99 report.

Duran's counsel then argued for the first time that there was good cause for a continuance because his co-counsel had diligently sought trial transcripts for a new trial motion but had only the day before received the transcripts for the first day of trial. The court noted that it had been four months since the verdict.[3]

Duran's counsel also moved to withdraw because he was not prepared to proceed with sentencing without the section 288.1 report. He asserted that before trial the trial court had considered offering Duran probation in exchange for a no-contest plea and the facts that emerged at trial were no different than

---

[3] The trial court said it had been four months since sentencing, but it is clear that it meant it had been four months since the verdict.

the facts available to the court before trial.  The trial court denied that motion as well.

Duran argued for probation based on the same mitigating factors he cited in his pre-sentencing filing.  The trial court imposed the middle term sentence of six years on the first count and consecutive sentences of one third of the middle term on the other two counts, for a total of 10 years.

## DISCUSSION

### I.  Denial of Continuance

#### A. Section 288.1 Report and Section 1203.03 Evaluation

Duran's primary argument on appeal is that the trial court abused its discretion and violated his due process rights by denying his request for a continuance to obtain a section 288.1 report and section 1203.03 evaluation.  "Continuances in criminal cases are to be granted only for good cause, and the trial court's denial of a continuance is reviewed for abuse of discretion only." (*People v. Rhoades* (2019) 8 Cal.5th 393, 451.)  The trial court's "discretion may not be exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.)  " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)

The Courts of Appeal have already rejected Duran's argument that a trial court must obtain a section 288.1 report or

section 1203.03 evaluation before sentencing a defendant who is eligible for probation like Duran. *People v. Thompson* (1989) 214 Cal.App.3d 1547, 1549–1550 (*Thompson*) held that a section 288.1 report is required only if a trial court is inclined to grant probation. If the trial court is not so inclined, the report is unnecessary. (*Id.* at p. 1549.) Section 288.1 states, "Any person convicted of committing any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years shall not have his or her sentence suspended until the court obtains a report from a reputable psychiatrist, from a reputable psychologist who meets the standards set forth in Section 1027, as to the mental condition of that person." *Thompson* concluded from this language that "[t]he obvious intent of the Legislature in enacting this statute was to protect society by requiring a psychiatric or psychological report insuring that defendant is a suitable candidate for probation." (*Thompson*, at p. 1549.) "[I]f after reviewing all the facts, the presentence report and the statements in mitigation and aggravation, the court does not feel that probation is proper, then there is no duty to request a section 288.1 report." (*Ibid.*)

In his reply brief, despite the Legislature's apparent acquiescence to *Thompson*'s holding for almost 30 years, Duran rejects *Thompson* as wrongly decided. He faults *Thompson* for not addressing section 1203.067, subdivision (a), which was enacted in 1994 (five years after *Thompson* was decided) and states in pertinent part, "Notwithstanding any other law, before probation may be granted to any person convicted of a felony

7

specified in Section . . . 288 . . . who is eligible for probation, the court shall do all of the following: [¶] (1) Order the defendant evaluated pursuant to Section 1203.03, or similar evaluation by the county probation department. [¶] . . . [¶] (3) Order any psychiatrist or psychologist appointed pursuant to Section 288.1 to include a consideration of the threat to the victim and the defendant's potential for positive response to treatment in making the report to the court." (See Stats. 1994, ch. 918, § 1.)

Section 1203.067 does not undermine *Thompson*'s conclusion. The statute on its face only requires the section 288.1 report and section 1203.03 evaluation "before probation may be *granted*." (§ 1203.067, subd. (a), italics added.) By its own terms, the statute does not apply if a trial court denies probation. We must follow the unambiguous meaning of the statute's plain language. (*People v. Arias* (2008) 45 Cal.4th 169, 177.)

Duran's argument also ignores *People v. Ramirez* (2006) 143 Cal.App.4th 1512 (*Ramirez*). Like Duran, the defendant there argued the trial court should have ordered a diagnostic evaluation pursuant to section 1203.067. (*Ramirez*, at pp. 1531—1532.) Citing *Thompson*, *Ramirez* rejected the argument. "A section 1203.067 diagnostic evaluation becomes necessary only if, after weighing the criteria listed in rule 4.414, a court is inclined to order probation rather than prison time. When the court has no intention of granting probation, and the record adequately supports such a determination, there is no need for a section 1203.067 diagnostic evaluation." (*Id.* at p. 1532.)

Although Duran does not cite them, several cases, including one pre-dating *Thompson,* have held that when a defendant pleads guilty to violating section 288, it does not violate *People v. Harvey* (1979) 25 Cal.3d 754 to use facts concerning dismissed counts in a section 288.1 report when denying probation because section 288.1 requires the report on such a defendant's suitability for probation. (*People v. Franco* (1986) 181 Cal.App.3d 342, 350–351; *People v. Bustamante* (1992) 7 Cal.App.4th 722, 725–726; *People v. Lamb* (1999) 76 Cal.App.4th 664, 672–674.) We do not disagree with the outcomes in these cases, since a defendant who pleads guilty must be aware that a trial court must require the preparation of the report if it is inclined to grant probation. But these decisions cannot be read to hold that a section 288.1 report or section 1203.03 evaluation is mandatory in every case or upon a defendant's request, regardless of the trial court's inclinations. This issue did not arise in those cases, and the courts did not grapple with the precise statutory language at issue discussed above.

Duran cites *People v. Bohannon* (2000) 82 Cal.App.4th 798, 807–809, disapproved on other grounds by *People v. Zambrano* (2007) 41 Cal.4th 1082, 1135, fn. 13, which held that when a defendant's counsel received the probation report on the day of the sentencing hearing, the trial court's denial of a continuance violated section 1203 and due process. He argues that when the Legislature wants to exempt courts from reporting requirements, it does so explicitly. We agree with Duran that the Legislature is

9

explicit when it intends to require trial courts to receive reports before sentencing. But neither this principle nor *Bohannon* helps him. Duran received the standard section 1203 probation report two weeks in advance of sentencing, so *Bohannon* does not directly apply here. Nor does it apply by analogy, since the operative language in section 1203 and 1203.067 is materially different. With an exception not relevant here, section 1203, subdivision (b)(1) states that "if a person is convicted of a felony and is eligible for probation, before judgment is pronounced, the court shall immediately refer the matter to a probation officer to investigate and report to the court, at a specified time, upon the circumstances surrounding the crime and the prior history and record of the person, which may be considered either in aggravation or mitigation of the punishment." Section 1203, subdivision (b)(2)(E) further provides, "The report shall be made available to the court and the prosecuting and defense attorneys at least five days, or upon request of the defendant or prosecuting attorney nine days, prior to the time fixed by the court for the hearing and determination of the report, and shall be filed with the clerk of the court as a record in the case at the time of the hearing."[4] Section 1203, subdivision (b)(2)(E) and (b)(4) allow defense counsel to waive the preparation of the report or the five-day period but only in writing or in open court.

---

[4] When *Bohannon* was decided, this provision was numbered as section 1203, subdivision (b)(2)(D). (See *People v. Bohannon*, *supra*, 82 Cal.App.4th at p. 808.)

10

The contrast between this language and section 1203.067 is stark. Where section 1203 requires the preparation of the standard probation report "before judgment is pronounced" (§ 1203, subd. (b)(1)) and specifies the methods by which a defendant can waive the deadline for his receipt of report (*id.*, subd. (b)(2)(E)) or the preparation of the report entirely (*id.*, subd. (b)(4)), section 1203.067, subdivision (a) requires a section 288.1 report or section 1203.03 evaluation only "before probation may be granted." If the Legislature intended to entitle a defendant like Duran to a section 288.1 report or section 1203.03 evaluation, it would have used language expressly saying so, like in section 1203. Thus, while the trial court properly continued the sentencing hearing once at Duran's request to allow his counsel to receive and consider the probation report, it did not err by refusing to continue the hearing a second time to receive a section 288.1 report or section 1203.03 evaluation.

Duran points out that the probation report here said it could not recommend a grant of probation in the absence of a section 288.1 report. He argues that a report that concedes its own inadequacy in this regard is tantamount to a late-delivered report like in *Bohannon*. The probation report did not say that it could not evaluate suitability for probation, only that absence of the prerequisite section 288.1 report prevented the probation department from recommending probation. The probation report here contained more than enough facts to allow the trial court to evaluate the factors relevant to probation and determine whether it was inclined to grant probation and to allow Duran's counsel to

11

make a meaningful argument on his behalf. Besides, the absence of a section 288.1 report cannot itself render a probation report inadequate. If it did, it would be a strangely convoluted, indirect way of mandating a section 288.1 report or section 1203.03 evaluation. We cannot conceive that the Legislature wrote the statutory scheme in this fashion.

Duran further contends that *Thompson* (and, presumably, *Ramirez*, although Duran does not cite or discuss it) creates a logical impossibility in that it requires a court to decide whether it is inclined toward probation, which is a sentencing determination, before receiving the reports that are intended to inform that determination. There is no impossibility. A trial court could be provisionally persuaded to grant probation by, e.g., sentencing memoranda or a statement of mitigation filed before a sentencing hearing or a defendant's arguments at the hearing. The trial court could then continue the sentencing hearing and order the preparation of the section 288.1 report and section 1203.03 evaluation. At the continued sentencing hearing, the trial court could make a final sentencing determination informed by the additional materials. The trial court could have easily followed this procedure here, since Duran filed a statement of mitigation on October 30 and the parties evidently held a discussion in chambers in advance of the sentencing hearing at which Duran asked for a continuance to allow the court to consider a section 288.1 report and section 1203.03 evaluation. If the trial court were inclined to consider probation, perhaps because of Duran's counsel's arguments in chambers or the

12

statement in mitigation he had filed before the hearing, nothing prevented it from granting the continuance that Duran requested.

Duran notes that *Thompson*, *supra*, 214 Cal.App.3d at page 1549 acknowledged that the purpose of section 288.1 is to protect society by requiring expert evaluation of whether a defendant is suitable for probation. He contends that under *Thompson*'s rule, this protection is available only when a trial court is already inclined to grant probation, which is when society's protection is least at stake. Duran appears to misunderstand *Thompson*'s point. If a trial court is not inclined to grant probation, there is no risk to society because the defendant will be incarcerated. Society is only at risk when a trial court may release a defendant on probation. Section 1203.067 reflects the Legislature's judgment that it is important to give trial courts additional information when they may grant probation, to prevent them from granting probation when it may be inappropriate. In other words, it seeks to prevent inappropriate *grants* of probation. Duran may believe section 288.1 reports and section 1203.03 evaluations are also helpful to prevent inappropriate *denials* of probation. But that is evidently not the Legislature's view, since it did not mandate the preparation of such materials before pronouncing judgment, only before granting probation.

Duran tries to distinguish *Thompson* on the grounds that it involved a guilty plea and the defendant there did not dispute that the denial of probation was supported by the record. (*Thompson*, *supra*, 214 Cal.App.3d at pp. 1548, 1550.) Duran

13

does not explain the significance of a guilty plea as opposed to a jury trial or the failure to challenge the basis for a denial of probation, and we see none. If the record does not support a denial of probation, then a defendant's sentence will be reversed and the trial court must order preparation of the reports. And if the record does support a denial of probation, those reports are unnecessary. This is borne out by *Ramirez*, *supra*, 143 Cal.App.4th at pages 1529–1531, which involved a jury trial and a defendant who challenged the basis for the denial of probation. After finding the denial supported by the record, the court followed *Thompson* and rejected the argument that the trial court should have prepared the additional reports. (*Ramirez*, at p. 1532.)

## B. Continuance for Trial Transcripts

Duran further contends the trial court abused its discretion in denying his request for a continuance to prepare a new trial motion. He notes that his counsel had received transcripts of only the first day of trial and argues the denial of a continuance violated due process because his counsel did not have a reasonable opportunity to prepare for the hearing. The record does not support this argument. As the trial court observed, the sentencing was held four months after the jury's verdict. Neither in the trial court nor on appeal has Duran explained why his counsel had obtained only one day's transcript by the time of sentencing. The trial was not long, lasting only two days, and the transcripts in the record here barely exceed 300 pages. A trial court's discretion to deny a continuance "may not be exercised so

14

as to deprive the defendant or his attorney of a reasonable opportunity to prepare" (*People v. Sakarias, supra*, 22 Cal.4th at p. 646), but Duran fails to show why four months was not a reasonable opportunity to prepare a new trial motion.

## II. Denial of Probation

Duran finally contends the trial court's denial of probation should be reversed because its finding that he lacked remorse was contrary to the record and legally improper. He argues the trial court's remorse finding must have been based on his rejection of a plea deal, which is improper. He also briefly asserts the trial court failed to consider mitigating circumstances.

Duran argued to the trial court in a pre-sentencing brief and at the hearing that various mitigating circumstances applied, such as that his offense was less serious than other violations of section 288 and that he had no prior felony convictions. The trial court's evident disagreement with Duran's assessment does not mean it failed to consider the factors he identified, and Duran cites no authority to the contrary. The record also supports the trial court's finding that Duran did not demonstrate remorse. Nothing in the probation report suggests that Duran demonstrated any remorse to the probation officer who interviewed him, which in itself supports the probation report's statement and the trial court's finding. Nor do his statements in the probation report suggest he felt any remorse. Duran argues that expressions of remorse can be found outside a probation report, and we agree. But nowhere else in the record do we see an expression of remorse. Duran did not address the

court at sentencing, instead arguing through counsel that the probation report's finding of lack of remorse was unfounded. Duran argues that he demonstrated remorse when he told an investigator before trial that he was sorry for what Doe was going through. But the only record citation he provides to support this assertion is to his statement in mitigation filed after trial. The transcript of the call does not demonstrate any such remark, and he did not mention any such remark in his own testimony. Duran did tell the investigator, "You always have to listen to a child," and the investigation was a "hard subject," but these comments were in reference to it being a difficult subject for Duran to speak about, not Doe.

Finally, we reject Duran's contention that the trial court's denial of probation must have been based on his exercise of his right to a trial. He asserts that the facts known to the court at the time of the plea were the same as those that emerged during trial, but he cites nothing to substantiate the assertion other than his own counsel's statements in the trial court. Besides, to prove the trial court punished him for exercising his right to trial Duran must cite something more than the mere fact that his sentence after trial was more severe than the terms he was offered before trial. (*People v. Szeto* (1981) 29 Cal.3d 20, 34–35.) He cites no such facts, so this contention fails.

## DISPOSITION

The judgment is affirmed.

BROWN, P. J.

16

WE CONCUR:

GOLDMAN, J.
SWEET, J.[5]


*People v. Duran* (A172592)

---

[5] Judge of the Superior Court of Marin County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.